OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This appeal puts before us a recurring scenario regarding the timing of summary judgment motions that ignores statutory law, disrupts trial calendars, and undermines the goals of orderliness and efficiency in state court practice.
 

 On June 4, 1998, plaintiffs Ona and Maurice Brill brought suit against the City of New York and others for injuries Ona Brill allegedly suffered on February 15, 1998 when she tripped and fell on a public sidewalk in Brooklyn.
 
 [1]
 
 Following discovery, on June 28, 2001, plaintiffs filed their note of issue and certificate of readiness, and sought a preference due to Ona Brill’s age.
 

 On June 18, 2002, close to a year after the trial calendar papers were filed, the City moved for summary judgment. The City gave no explanation for filing the motion after the 120-day limit specified in CPLR 3212 (a), simply arguing that it did not have prior written notice of the alleged defect at the accident site and that plaintiffs could not show an exception to the prior written notice requirement. Supreme Court determined that in the interests of judicial economy, and since Mrs. Brill did not manifest any prejudice from the delay, it would decide the summary judgment motion on the merits. The court granted the City’s motion, finding plaintiffs did not prove that the City had notice of a defect at the accident site, and the Appellate Division affirmed.
 

 We now reverse because, on these facts, Supreme Court should not have considered the merits of the City’s motion for summary judgment.
 
 [2]
 

 Since New York established its summary judgment procedure in 1921, summary judgment has proven a valuable, practical
 
 *651
 
 tool for resolving cases that involve only questions of law
 
 (see Merritt Hill Vineyards v Windy Hgts. Vineyard,
 
 61 NY2d 106, 112 [1984]). Summary judgment permits a party to show, by affidavit or other evidence, that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law, thereby avoiding needless litigation cost and delay. Where appropriate, summary judgment is a great benefit both to the parties and to the overburdened New York State trial courts
 
 (see
 
 Siegel, NY Prac §§ 278-279, at 438-440 [3d ed];
 
 see also
 
 Weinstein-Korn-Miller, NY Civ Prac 1Í 3212.01, at 32-157).
 

 In that a summary judgment motion may resolve the entire case, obviously the timing of the motion is significant. CPLR 3212 (a) (as added by L 1962, ch 308) originally required only joinder of issue before a summary judgment motion could be made. In practice, however, the absence of an outside time limit for filing such motions became problematic, particularly when they were made on the eve of trial. Eleventh-hour summary judgment motions, sometimes used as a dilatory tactic, left inadequate time for reply or proper court consideration, and prejudiced litigants who had already devoted substantial resources to readying themselves for trial
 
 (see Gonzalez v 98 Mag Leasing Corp.,
 
 95 NY2d 124, 128 [2000];
 
 Auger v State of New York,
 
 236 AD2d 177, 179 [3d Dept 1997]).
 

 At the court system’s request, in 1996 the Legislature stepped in to ameliorate the problem by amending CPLR 3212 (a) to provide that:
 

 “the court may set a date after which no such motion may be made, such date being no earlier than thirty days after the filing of the note of issue. If no such date is set by the court, such motion shall be made no later than one hundred twenty days after the filing of the note of issue, except with leave of court on good cause shown.”
 

 By the amendment, the Legislature maintained the courts’ considerable discretion to fix a deadline for filing summary judgment motions, after joinder of issue, but mandated that no such deadline could be set earlier than 30 days after filing the note of issue or (unless set by the court) later than 120 days after the filing of the note of issue, except with leave of court on good cause shown. Thus, the Legislature struck a balance, fixing an outside limit on the time for filing summary judgment motions, but allowing courts latitude to set an alternative limit or to consider untimely motions to accommodate genuine need.
 

 
 *652
 
 Nonetheless, the practice of filing late summary judgment motions persisted, with the statutory “good cause” requirement a new litigation battleground. Some courts concluded that “good cause” required a satisfactory explanation for movant’s delay, and refused to entertain the motion if no such showing was made
 
 (see e.g. Carvajal v M. Madison LLC,
 
 297 AD2d 550, 551 [1st Dept 2002];
 
 Hilton v City of New Rochelle,
 
 298 AD2d 360, 360 [2d Dept 2002];
 
 Ripepe v Crown Equip. Corp.,
 
 300 AD2d 647 [2d Dept 2002];
 
 Falcone v Khurana,
 
 294 AD2d 535, 536 [2d Dept 2002];
 
 Borelli v Gegaj,
 
 248 AD2d 299 [1st Dept 1998];
 
 DiFusco v Wal-Mart Discount Cities,
 
 255 AD2d 937, 937 [4th Dept 1998];
 
 John v Bastien,
 
 178 Misc 2d 664, 666-667 [Civ Ct, Kings County 1998];
 
 see also Luciano v Apple Maintenance & Servs.,
 
 289 AD2d 90, 90-91 [1st Dept 2001] [movant’s explanation was an adequate showing of good cause for the delay]). Other courts read “good cause” to permit late filing where the motion had merit and there was no prejudice to the adversary
 
 (see e.g. Burns v Gonzalez,
 
 307 AD2d 863, 864-865 [1st Dept 2003];
 
 Lee v City of New York,
 
 307 AD2d 256, 256 [2d Dept 2003];
 
 Simmonds v Long Is. R.R. Co.,
 
 296 AD2d 487, 487 [2d Dept 2002];
 
 Garrison v City of New York,
 
 300 AD2d 14, 15 [1st Dept 2002],
 
 lv denied
 
 99 NY2d 510 [2003];
 
 Medina v Barbaro,
 
 279 AD2d 615, 615-616 [2d Dept 2001]).
 

 We conclude that “good cause” in CPLR 3212 (a) requires a showing of good cause for the delay in making the motion—a satisfactory explanation for the untimeliness—rather than simply permitting meritorious, nonprejudicial filings, however tardy. That reading is supported by the language of the statute—only the movant can
 
 show
 
 good cause—as well as by the purpose of the amendment, to end the practice of eleventh-hour summary judgment motions. No excuse at all, or a perfunctory excuse, cannot be “good cause.”
 

 Here, it is undisputed that the City did not file its motion within the requisite 120 days specified by the statute, and it did not submit any reason for the delay. Thus, there was no “leave of court on good cause shown,” as required by CPLR 3212 (a). The violation is clear. What to do is the more vexing issue.
 

 In
 
 Kihl v Pfeffer
 
 (94 NY2d 118, 123 [1999]), we affirmed the dismissal of a complaint for failure to respond to interrogatories within court-ordered time frames, observing that “[i]f the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with
 
 *653
 
 impunity.”
 
 [3]
 
 The present scenario, another example of sloppy practice threatening the integrity of our judicial system, rests instead on the violation of legislative mandate.
 

 If this practice is tolerated and condoned, the ameliorative statute is, for all intents and purposes, obliterated. If, on the other hand, the statute is applied as written and intended, an anomaly may result, in that a meritorious summary judgment motion may be denied, burdening the litigants and trial calendar with a case that in fact leaves nothing to try. Indeed, the statute should not “provide a safe haven for frivolous or meritless lawsuits”
 
 (Rossi v Arnot Ogden Med. Ctr.,
 
 252 AD2d 778, 779 [3d Dept 1998] [Graffeo, J.]), which is precisely why practitioners should move for summary judgment within the prescribed time period or offer a legitimate reason for the delay.
 

 As Professor David Siegel—who has tracked this “controversial topic”—has promised, “we’d think better of judicial decisions that absolutely refuse to extend the time for meritorious summary judgment motions if they would tell us what is to happen in the case” (79 Siegel’s Practice Review,
 
 Time Limit on Summary Judgment,
 
 at 2 [Jan. 1999];
 
 see also
 
 51 Siegel’s Practice Review,
 
 Strict Time Limit Placed on Motion for Summary Judgment,
 
 at 1 [Nov. 1996]; Siegel, NY Prac § 279, at 440 [3d ed]).
 

 What is to happen in this case is that summary judgment will be reversed and the case returned to the trial calendar, where a motion to dismiss after plaintiff rests or a request for a directed verdict may dispose of the case during trial. Hopefully, as a result of the courts’ refusal to countenance the statutory violation, there will be fewer, if any, such situations in the future, both because it is now clear that “good cause” means good cause for the delay, and because movants will develop a habit of compliance with the statutory deadlines for summary judgment motions rather than delay until trial looms.
 
 [4]
 

 
 *654
 
 Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion of the City of New York for summary judgment dismissing the complaint against it denied.
 

 G.B. Smith, J. (dissenting). Because there was good cause for the trial court to entertain this motion and because the time of the litigants, jurors, lawyers, the judge, and other court personnel should not be wasted in going through the motions of a trial which has no merit and must be dismissed, I dissent.
 

 On February 15, 1998, plaintiff Ona Brill decided to take a walk in an area of Brooklyn, New York. During the walk, she fell, allegedly because of a broken sidewalk. She sustained injuries to her left shoulder. Plaintiffs commenced an action against the City of New York and other defendants. The case against the other defendants was settled and only the action concerning the City of New York is before us. On June 28, 2001, plaintiffs filed a note of issue and a certificate of readiness. Subsequent to that filing, defendants filed a motion for summary judgment seeking dismissal of the action. The trial court granted the motion and the Appellate Division affirmed. This Court then granted leave to appeal.
 

 CPLR 3212 (a) provides:
 

 “Any party may move for summary judgment in any action, after issue has been joined; provided however, that the court may set a date after which no such motion may be made, such date being no earlier than thirty days after the filing of the note of issue. If no such date is set by the court, such motion shall be made no later than one hundred twenty days after the filing of the note of issue, except with leave of court on good cause shown.”
 

 The trial court did not abuse its discretion in entertaining the motion. The good cause shown was the merits of the action. This action is governed by Administrative Code of the City of New York § 7-201 (c) (the Pothole Law). That section requires that the City of New York be given written notice of any defect in a sidewalk prior to a lawsuit. While the City was given notice of other sidewalk defects in the area near the accident, the City was not given notice of the defect which allegedly caused plaintiffs fall.
 

 In reversing the order of the Appellate Division, the majority in effect states that the trial court and the Appellate Division
 
 *655
 
 should not have applied the law. The consequence of the reversal is that a trial will commence, giving a futile hope to the litigants and wasting the time of those same litigants, the jurors, the attorneys, the judge and other court personnel. Once the parties make an opening statement or plaintiffs put in their case indicating that the appropriate notice was not given, this case will again be dismissed.
 

 Moreover, nothing that the defendant did prejudiced the plaintiff. The clear fact is that the plaintiff cannot prove a prima facie case and thus that she is entitled to prevail.
 

 The majority interprets the phrase good cause to mean an excuse for not moving for summary judgment in a timely manner. Lower courts have interpreted the meaning of good cause in two different ways. One meaning is a reasonable excuse for an untimely motion
 
 (see Carvajal v M. Madison LLC,
 
 297 AD2d 550, 551 [1st Dept 2002];
 
 Hilton v City of New Rochelle,
 
 298 AD2d 360 [2d Dept 2002];
 
 Slate v State of New York,
 
 284 AD2d 767, 769 [3d Dept 2001];
 
 DiFusco v Wal-Mart Discount Cities,
 
 255 AD2d 937 [4th Dept 1998]). The other meaning includes the merits of a case in a determination of good cause
 
 (see Garrison v City of New York,
 
 300 AD2d 14, 15 [1st Dept 2002],
 
 lv denied
 
 99 NY2d 510 [2003];
 
 Simmonds v Long Is. R.R. Co.,
 
 296 AD2d 487 [2d Dept 2002]). What is clear from the legislative history is that the Legislature sought to give the trial court wide discretion in entertaining a motion for summary judgment. The Legislature could not have intended to grant a futile hope to a litigant or to waste the time of a number of people when the state courts are as burdened as they are. Thus, I cannot agree that the 1996 amendment (L 1996, ch 492), which prohibited a motion for summary judgment more than 120 days after the filing of the note of issue except with leave of court and upon good cause shown, limited good cause to an excuse for an untimely motion. The issue of the merits of the plaintiff’s claim is squarely presented here and should be addressed.
 

 Moreover, even if good cause is interpreted to mean only an excuse for an untimely motion, the appropriate remedy is to progressively impose higher penalties by way of costs and sanctions, and even, in an appropriate case, preclusion of the defen
 
 *656
 
 dant from, asserting the defense of the Pothole Law.
 
 *
 
 Thus, I agree with the trial court and the Appellate Division that dismissal is appropriate in this case.
 

 Accordingly, I dissent.
 

 Judges Ciparick, Rosenblatt, Graffeo, Read and R.S. Smith concur with Chief Judge Kaye; Judge G.B. Smith dissents and votes to affirm in a separate opinion.
 

 Order reversed, etc.
 

 [1]
 

 . The case has been settled with the codefendants.
 

 [2]
 

 . Nor have we considered the merits of the City’s motion.
 

 [3]
 

 .
 
 (See D’Aloisi v City of New York,
 
 7 AD3d 750 [2d Dept 2004];
 
 Mendez v City of New York,
 
 7 AD3d 766 [2d Dept 2004].) While we of course express no view on the merits of the two recent Appellate Division decisions, as the cases cited in
 
 Kihl
 
 and in this opinion reveal, failure to adhere to deadlines— whether court-ordered or statutory—is not limited to the City of New York.
 

 [4]
 

 . The dissent proposes monetary sanctions and preclusion as remedies (dissenting op at 655-656). Preclusion on the merits may, as a rule for the future, be wholly disproportionate to the violation. Without considering whether we may impose sanctions against a municipality for violating a statute, six of us conclude that denying summary judgment—simply not considering the merits
 
 *654
 
 of an unexcused, untimely motion—is not only the correct remedy under the law but also will most effectively bring an undesirable practice to an end.
 

 *
 

 See, for example,
 
 McCain v Dinkins
 
 (84 NY2d 216 [1994] [imposition of fines against City of New York following contempt proceedings and citing Judiciary Law § 753 (A) (3) as authority for said imposition]).