■ ARLENE C. FARKAS, Respondent, v BRUCE R. FARKAS, Appellant. [835 NYS2d 118]—

Order and judgment (one paper), Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered June 23, 2005, awarding plaintiff $750,000 with interest from August 6, 2003, reversed, on the law, without costs, the judgment vacated and the claim underlying the judgment dismissed as abandoned pursuant to 22 NYCRR 202.48 (b).

The Court of Appeals has recently made it clear that "statutory time frames—like court-ordered time frames—are not options, they are requirements, to be taken seriously by the parties" (*Miceli v State Farm Mut. Auto. Ins. Co.*, 3 NY3d 725, 726 [2004] [citation omitted], following *Brill v City of New York*, 2 NY3d 648 [2004]). Thus, where a statute or court rule prescribes a limited time frame in which to take a procedural step in litigation, and states that a party's failure to act within that time frame will be excused only upon a showing of "good cause," such a showing requires demonstrating, as the dissent puts it, "more . . . than [the] merit . . . [of] the underlying application and a lack of prejudice to the other party." This bench is unanimous in holding that this principle applies in the instant case, in which plaintiff failed to comply with the 60-day time frame for the submission of a judgment to the court for signature (Uniform Rules for Trial Cts [22 NYCRR] § 202.48 [a], [b]). Because plaintiff has failed to show good cause for her failure to comply with the time frame set forth in the Uniform Rules, we are constrained to reverse and vacate the judgment.

The dissent, while agreeing that a showing of "good cause" in this case requires plaintiff to provide "[a] 'satisfactory explanation' . . . for not meeting the 60-day time frame of section 202.48," seems to hold that this standard is satisfied wherever the judgment in question arises from a "complex matrix of litigation" and the adverse party is, colloquially speaking, a "bad guy" (a term that indisputably applies to defendant). In view of these purportedly "unique circumstances," the dissent deems excusable the entirety of plaintiff's 4½-year delay in submitting a judgment, even though the only reason the dissent can find for plaintiff's last 21 months of delay is that she was actively litigating other issues against defendant, and (due to defendant's

wrongful conduct) could not have immediately enforced the judgment in any event. Not only does the dissent not adduce any specific factor that impeded plaintiff's ability to submit a judgment during the final 21 months of the period at issue, the record contains an admission by plaintiff's counsel that the failure to timely submit a judgment was the result of counsel's own "oversight." In our view, excusing plaintiff's failure to comply with the 60-day time frame under these circumstances is tantamount to abolishing the requirement of "good cause" in any case in which the court finds it distasteful to enforce the rule. We see no warrant for such a departure from the approach mandated by the Court of Appeals' recent case law.

This appeal arises from a bitterly contested divorce action that was commenced in 1991. One of the matters at issue was a debt the parties owed to Chemical Bank, based on an equity line of credit defendant husband had obtained by pledging as security the cooperative shares assigned to the marital residence. Chemical Bank commenced a foreclosure action against the parties to recover this debt in 1994. The April 1999 judgment of divorce directed defendant to pay all sums due Chemical Bank within 30 days, failing which "plaintiff [wife] shall be entitled to enter a money judgment against defendant for the total amount due and owing to Chemical Bank without further order."

Defendant did not obey the court's directive to pay the parties' debt to Chemical Bank. Accordingly, in June 2000, plaintiff moved for entry of a money judgment in her favor against defendant in the amount of $984,401.17, which was then the amount Chemical Bank claimed the parties owed it. By order dated October 13, 2000, and entered October 17, 2000, Supreme Court granted this application, providing that "plaintiff may settle the judgment thereon." The relevant decretal paragraph further provided that, "[u]pon plaintiff's suggestion, such judgment may contain language staying execution thereon pending determination or other disposition of the Chemical Bank foreclosure action."

Although the order granting plaintiff's application for judgment in the Chemical Bank matter was entered on October 17, 2000, it was not until May 2, 2005—4½ years later—that plaintiff finally served defendant with a notice of settlement and a proposed judgment. The proposed judgment recited that plaintiff and Chemical Bank had settled the foreclosure action for $750,000.00 on or about August 6, 2003. Apparently based on this development, the proposed judgment was in the principal amount of $750,000.00 (rather than $984,401.17, the amount

stated in the October 2000 order), with interest to run from August 6, 2003. Defendant opposed entry of the proposed judgment, arguing that it was untimely under 22 NYCRR 202.48 (a), more than 60 days having passed since entry of the order directing settlement of the judgment.[1] Therefore, defendant argued, the action should be deemed abandoned pursuant to 22 NYCRR 202.48 (b), since plaintiff had not shown "good cause" for the delay.[2] On June 20, 2005, the court, without making any finding on the "good cause" issue, signed the judgment submitted by plaintiff without material amendment, and it was entered on June 23, 2005.[3] Defendant now appeals.

Although we agree that there was arguably good cause for delaying settlement of the judgment until after the Chemical Bank foreclosure action was settled in August 2003, the record reveals no justification for plaintiff's failure to submit a judgment for an additional year and nine months thereafter. The relevant portion of the October 2000 order granted plaintiff's application for judgment in the amount of the parties' debt to Chemical Bank, which was being litigated in the foreclosure action. While the foreclosure action was still pending, the amount of the debt to Chemical Bank was undetermined (as recognized by the October 2000 order itself), and, therefore, plaintiff's failure to submit a judgment during the foreclosure action's pendency was at least arguably justifiable. However, once the foreclosure action was settled on or about August 6, 2003, the amount of plaintiff's indebtedness to Chemical Bank was finally determined, and no reason remained for plaintiff to continue to delay her submission of a judgment.

As the dissent appears to recognize, plaintiff's failure to comply with the clear mandate of the Uniform Rules is not jus-

---

1. Subdivision (a) of 22 NYCRR 202.48 provides: "Proposed orders or judgments, with proof of service on all parties where the order is directed to be settled or submitted on notice, must be submitted for signature, unless otherwise directed by the court, within 60 days after the signing and filing of the decision directing that the order be settled or submitted."

2. Subdivision (b) of 22 NYCRR 202.48 provides: "Failure to submit the order or judgment timely shall be deemed an abandonment of the motion or action, unless for good cause shown."

3. Since the IAS court, in signing the judgment, did not make any finding that "good cause" for the delay had been shown (indeed, the judgment it signed did not include even a conclusory recitation to that effect), there is not, contrary to the dissent's view, any "good cause" finding to which we owe deference. Even if we were to accept the dissent's view that the IAS court should be deemed to have made such a finding by necessary implication, sub silentio, the Court of Appeals' jurisprudence in this area establishes that, in certain cases, "good cause" for delay may be absent as a matter of law. As discussed below, we believe that this is such a case.

tified either by the lack of prejudice to defendant from the late submission of the judgment or by the merit of the claim on which the judgment is based (*cf. Brill*, 2 NY3d at 652 ["good cause" for a late summary judgment motion under CPLR 3212 (a) "requires a showing of good cause for the delay in making the motion—a satisfactory explanation for the untimeliness—rather than simply permitting meritorious, nonprejudicial filings, however tardy"]). The dissent nonetheless claims to find the "good cause" required to save plaintiff's judgment in the circumstance that, throughout the period in question, the parties were embroiled in "strenuous legal battles fought simultaneously on a variety of fronts," and that such continuing litigation was necessitated by defendant's bad faith efforts to avoid paying his fully adjudicated legal obligations to plaintiff. While this is certainly true (indeed, defendant does not deny it), it does not change the fact that only the Chemical Bank foreclosure action had any bearing on plaintiff's ability to settle the judgment here at issue. We do not see how the other matters the parties were litigating during this period—however urgent they were, and however inexcusable defendant's misconduct—can be deemed to constitute "good cause" for plaintiff's counsel's failure to submit a judgment within 60 days after the settlement with Chemical Bank (if not earlier). After all, submitting such a judgment required nothing more than performing the essentially ministerial tasks of drafting, serving and filing a one-page notice of settlement and a two-page proposed judgment. We see no basis for the dissent's suggestion that the slight investment of counsel's time and effort that was required to settle the judgment would have interfered with plaintiff's unquestionable "need . . . to focus attention on enforcement techniques that might actually give [her] some relief."

While a judgment submitted for settlement within 60 days after the foreclosure action settled evidently would not have been enforceable immediately upon entry (which, unquestionably, was due to defendant's inexcusable misconduct), that circumstance, in itself, was no reason to wait more than another year and a half before seeking entry of such a judgment. Contrary to the dissent's statement that having a judgment entered at the time the foreclosure action settled would have been "an empty gesture," plaintiff's counsel was then actively seeking avenues for enforcing her extant judgments against defendant, and that search ultimately bore fruit. The implication of the dissent's position is that the 60-day period of 22 NYCRR 202.48 does not begin to run until the plaintiff knows that the judgment will be enforceable. Not only would the dissent thus essentially rewrite section 202.48, it would do so for no apparent good reason of

policy, since uncertainty as to the enforceability of a fully litigated judgment is no impediment to settling that judgment.

The truth is that plaintiff's failure to timely submit a judgment based on the Chemical Bank debt was simply an instance of law office failure. In fact, plaintiff's counsel essentially has admitted as much. In reply to defendant's opposition to the belated submission of the judgment, plaintiff's counsel, after recounting the course of the parties' contentious litigation over the preceding years, concluded that "any failure to timely submit the Order [sic] for settlement is based on an oversight by the firm filing." In view of *Brill* and its progeny, however, law office failure clearly does not constitute "good cause" for delay within the meaning of 22 NYCRR 202.48 (b).

The dissent, while acknowledging that plaintiff's noncompliance with 22 NYCRR 202.48 was the result of law office failure, suggests that such failure may itself constitute "good cause" for delay under the rule. We disagree. CPLR 2005, which provides that courts may exercise their discretion "to excuse delay or default resulting from law office failure," applies, by its express terms, only to applications to extend time to appear or plead under CPLR 3012 (d) and to motions for relief from a judgment or order under CPLR 5015 (a), neither of which is at issue here. While it is true that the Court of Appeals, in 1989, construed CPLR 2004's "good cause" requirement for an extension of "the time fixed by any statute, rule or order for doing any act" to be satisfied by law office failure (*see Tewari v Tsoutsouras*, 75 NY2d 1, 12-13 [1989]), the applicability of CPLR 2004 is expressly limited by its opening phrase ("Except where otherwise expressly prescribed by law"). In *Tewari*, applicable law did not expressly provide otherwise, since, as then-Judge Kaye noted in her concurrence, the underlying statute at issue (CPLR 3406 [a]) did "not plainly authorize[] dismissal" for failure to meet the relevant deadline (75 NY2d at 13-14). Here, by contrast, 22 NYCRR 202.48 (b) specifically provides that failure to comply with the mandated time frame "*shall* [not may] be deemed an *abandonment* of the motion or action" (emphasis added).

In addition, the more contemporary *Brill* and *Miceli* decisions (which, tellingly, do not cite *Tewari*) indicate that courts are now expected to take a stricter approach to the enforcement of litigation deadlines (*see also Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.]*, 5 NY3d 514, 521 [2005] [holding that an action dismissed for noncompliance with discovery orders cannot be recommenced pursuant to CPLR 205 (a), notwithstanding

that it was "undesirable to punish plaintiffs for the failures of their counsel"]). The strictness mandated by *Brill* and *Miceli* necessarily implies that law office failure cannot generally be deemed to constitute "good cause," since, if good cause included law office failure, it would exist in *every* case of untimeliness where the opposing parties were not prejudiced by the delay. While the dissent correctly points out that the *Brill* approach to the determination of "good cause" for untimeliness leads to harsher results in the context of settling a fully litigated judgment than it does in the context of determining the right to summary judgment, the greater severity of the rule's impact in this case (which is regrettable) does not change the fact there was simply no good reason for the last 21 months of plaintiff's delay in seeking settlement of her judgment.[4]

Given the undisputed merit of plaintiff's claim, and defendant's long history of inequitable conduct, we reverse the judgment with reluctance. Still, we see no way to harmonize the dissent's approach with the current state of the law, given the language of 22 NYCRR 202.48, the Court of Appeals' construction of the term "good cause" in *Brill*, and the emphasis the Court of Appeals has placed in recent years on the importance of enforcing codified and court ordered litigation deadlines in order to protect "the integrity of our judicial system" (*Brill*, 2 NY3d at 653). As the Court of Appeals recently stated in a similar context, "[l]itigation cannot be conducted efficiently if deadlines are not taken seriously, and . . . disregard of deadlines should not and will not be tolerated" (*Andrea*, 5 NY3d at 521).

We could affirm the untimely submitted judgment here only by disregarding the Uniform Rules, and, if this Court will not uphold the Rules, we doubt that trial courts or practicing attorneys can be expected to do so. To reiterate, the Court of Appeals, by its decisions in *Brill* and subsequent cases, has served notice of its determination not to tolerate the approach taken by the dissent. Given the undeniable equities between the parties, the result to which this leads in the present case is as distasteful to us as it is to the dissent. Nonetheless, this result

---

4. The dissent, in suggesting that *Brill* and *Miceli* are distinguishable in that "no excuse for the delay was offered" in those cases, overlooks that here, too, the only "excuse" established by the record for the last 21 months of plaintiff's failure to submit a judgment is her lawyers' "oversight." Again, if law office failure constituted "good cause" for granting relief from the consequences of untimeliness, an excuse for the delay would exist in every case. The dissent's apparent view that discretion invariably exists to deem law office failure to constitute good cause is inconsistent with the holding of *Brill* and *Miceli* that, where the only explanation for the delay is law office failure, good cause is absent as a matter of law.

is what the law, as announced by the Court of Appeals, requires on the undisputed facts of this case. Concur—Friedman, Williams and Catterson, JJ.

Saxe, J.P., and Malone, J., dissent in a memorandum by Saxe, J.P., as follows: The majority deprives plaintiff ex-wife of the $750,000 judgment she was rightfully granted against defendant ex-husband following his undisputed failure to repay Chemical Bank amounts withdrawn on an equity line of credit, as directed by an earlier court order. It does so on the ground that her lawyer failed to settle the money judgment within 60 days, as required by Uniform Rules for Trial Courts (22 NYCRR) § 202.48, and that *as a matter of law* she failed to present the requisite showing of good cause required by section 202.48 (b) to excuse the delay. It asserts repeatedly that it is, regrettably, *constrained* to do so by the Court of Appeals' recent pronouncements in *Brill v City of New York* (2 NY3d 648 [2004]) and *Miceli v State Farm Mut. Auto. Ins. Co.* (3 NY3d 725 [2004]), regarding compliance with statutory time limits. It ignores the component of discretion in any such determination of whether good cause was established (*see Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124, 129 [2000]), and in the process announces an absolute rule that under *Brill* and its progeny, law office failure *cannot* constitute good cause for the failure to comply with 22 NYCRR 202.48 (b).

In the unusual circumstances presented here, I would uphold the discretionary determination of the IAS court that good cause for the failure was sufficiently established. In my view, in rejecting the assertion that good cause was shown for plaintiff's failure to settle a judgment within the time frame of 22 NYCRR 202.48, the majority neglects to consider the context of the litigation between these parties, and the overriding need, in view of defendant's undisputed avoidance of all his legal obligations, to focus attention on enforcement techniques that might actually give plaintiff some relief. To the extent counsel acknowledges that the failure was theirs, that law office failure should not be so cavalierly discarded as at least part of the basis for a finding of good cause.

Section 202.48 (a) of the Uniform Rules requires that proposed orders or judgments be submitted for signature within 60 days after the filing of the underlying decision or order directing such submission or settlement. Subdivision (b) further provides that failure to timely submit the proposed judgment or order shall be deemed an abandonment of the motion, "unless for good cause shown."

Both *Brill* and *Miceli* involved the 120-day deadline for sum-

mary judgment motions imposed by CPLR 3212 (a), particularly the provision that such motions may only be made after expiration of the 120-day period "with leave of court *on good cause shown*" (emphasis added). *Brill* held, and *Miceli* reiterated, that " 'good cause' in CPLR 3212 (a) requires a showing of good cause for the delay in making the motion—a satisfactory explanation for the untimeliness—rather than simply permitting meritorious, nonprejudicial filings, however tardy" (2 NY3d at 652). It should be noted that *Brill* and *Miceli*'s strict imposition of the "good cause" requirement merely resulted in forcing a party with a meritorious but belated claim for summary relief to proceed to trial; in neither instance did the rule result in the forfeiture of an enormous money judgment granted to a party against an opponent who had thrown every possible obstacle in her path in the course of the litigation.

This is not to say that we should ignore the Rule's requirement of good cause for plaintiff's belated entry of a judgment. In fact, while the good cause provision in 22 NYCRR 202.48 does not necessarily require an identical showing to that of CPLR 3212 (a), I would agree that even under the former, more needs to be shown than merit to the underlying application and a lack of prejudice to the other party. A "satisfactory explanation" from plaintiff for not meeting the 60-day time frame of section 202.48 is necessary.

Here, the complex matrix of litigation between and involving these former spouses is the framework in which such a satisfactory explanation can be found. It also bears noting that the IAS court was intimately familiar with the parties' litigation history, having handled both the matrimonial trial and the related motions. In such circumstances, the IAS court's discretion to determine whether there was good cause for the failure to settle an order within the time frame of the rule is entitled to some deference, and I cannot say that the ruling was an improvident exercise of discretion.

Ever since 1990, after a marriage of over 30 years, Ms. Farkas has been involved in ongoing, virtually unending litigation in an attempt to obtain relief to which she is clearly entitled from Mr. Farkas. The original equitable distribution decision issued by the trial court in 1996 described the husband's egregious dissipation of marital assets—including payments to another woman to whom he was "married" in a secret bigamous ceremony while still married to plaintiff—as well as his history of ignoring court orders and judgments and being held in contempt and incarcerated for failure to abide by support directives, while continuing to live in luxury himself through his

mother's largesse. With regard to the equity line of credit debt on which Chemical Bank sought to foreclose, the trial decision directed Mr. Farkas to repay it in full, provided Mr. Farkas with two alternatives, and authorized Ms. Farkas, upon Mr. Farkas's failure to comply with *either* of these options, to enter a money judgment against him for the total amount due and owing to Chemical Bank. It bears emphasis that the judgment entered thereon, dated October 28, 1996, and the amended judgment dated April 14, 1999, authorized Ms. Farkas to enter a money judgment against defendant for the total amount due and owing to Chemical Bank *without further order*.

Three money judgments for support arrears totaling over $700,000 were entered between 1994 and 1998 by Ms. Farkas against Mr. Farkas. She was unable to collect on these judgments, however, because of Mr. Farkas's concealment of income and assets.

In June 2000, the trial judge was assigned three postjudgment applications brought by the parties. The first, which the court appropriately denied as "outrageous," was a baseless motion by Mr. Farkas to strike the provision of the judgment allowing Ms. Farkas to move for additional spousal support. The second was Ms. Farkas's application to punish Mr. Farkas for contempt based on his willful failure to pay the judgments for support arrears, which the court granted. The third was Ms. Farkas's motion for entry of a money judgment for $984,401.17, the principal sum said to be due to Chemical Bank, with interest and penalties; she also sought attorneys' fees for the amount she had incurred in defending the foreclosure action brought by Chemical Bank. The order dated October 13, 2000 granted this application as well, directing plaintiff to settle a judgment, and adding that "upon plaintiff's suggestion, such judgment shall contain language staying execution thereon pending determination or other disposition of the Chemical Bank foreclosure action."

While no such money judgment was settled, it is undisputed that in the intervening years (1) Ms. Farkas continued to actively litigate the foreclosure action with Chemical Bank until August 6, 2003, when the matter was finally settled, (2) Ms. Farkas was also forced to attempt to resolve her former counsel's claim to $337,506 in fees due and owing from the matrimonial and Chemical Bank actions, in litigation commenced in 2000 and only resolved in April 2005, and (3) Mr. Farkas continued to successfully evade enforcement of *all* the previously obtained money judgments against him.

By notice of settlement dated May 2, 2005, plaintiff sought to

settle a judgment against defendant in the amount of $750,000 with interest from August 6, 2003, for the balance due to Chemical Bank pursuant to stipulation. Defendant's attorney submitted an affirmation in opposition, arguing that the motion must be deemed abandoned pursuant to 22 NYCRR 202.48 (b) due to the nearly five-year delay in settling the judgment as directed in the October 13, 2000 order. In response, plaintiff's counsel explained the foregoing litigation history between the parties, and added that while plaintiff had previously been unable to locate defendant, who had fled the jurisdiction, in April 2005 legal action was taken to enforce the outstanding New York money judgments in the Miami-Dade Circuit Court in Florida, where Mr. Farkas had taken up residence. The IAS court, well aware of the full history of the litigation, rejected defendant's position and signed the judgment for entry, necessarily finding that good cause for the delay had been shown.

Initially, to characterize the length of the delay as "nearly five years," as defendant does, fails to acknowledge that during much of the time, between October 13, 2000 and August 6, 2003, plaintiff was actively attempting to *reduce* the amount Chemical Bank would accept in settlement of its claim. Indeed, the majority concedes that there was arguably good cause to refrain from settling the contemplated money judgment from October 13, 2000 through August 6, 2003.

But, even after the Chemical Bank litigation was finally settled, plaintiff was left with the greater problem of remaining unable to successfully enforce against defendant the numerous money judgments she already possessed. Entitlement to yet another money judgment against defendant was of less paramount concern than successfully enforcing those she already had, and finding the means to pay her former counsel.

Although the majority sees no relevance in the parties' long and tortured litigation history, focusing only on the question of whether plaintiff or her attorney was actually prevented from settling the judgment as directed, to my mind, the foregoing portrait of strenuous legal battles fought simultaneously on a variety of fronts in an effort to achieve real rather than illusory relief, satisfactorily explains counsel's failure to settle a judgment within 60 days of either the underlying order or the settlement of the Chemical Bank foreclosure action. Counsel's efforts were properly focused on enforcing long-outstanding money judgments against a defendant who secreted assets and fled the jurisdiction, particularly since the process of entering yet another money judgment would have been an empty gesture under the circumstances.

To the extent that the failure to settle the judgment can be deemed law office failure, *Brill* and its progeny do not support the majority's assertion that "law office failure clearly does not constitute 'good cause' for delay within the meaning of 22 NYCRR 202.48 (b)."

Law office failure is relied upon in numerous contexts to excuse delays and defaults. CPLR 2005 was enacted expressly to authorize courts to exercise discretion to excuse delay or default resulting from law office failure when considering applications to extend time to appear or plead under CPLR 3012 or to vacate a default under CPLR 5015 (a). CPLR 2004, which vests courts with discretion to "extend the time fixed by *any statute, rule or order* for doing any act, upon such terms as may be just and upon good cause shown" (emphasis added), was successfully relied upon where the excuse given for the untimeliness in filing a CPLR 3406 (a) notice "amount[ed] to little more than law office failure" (*see Tewari v Tsoutsouras*, 75 NY2d 1, 12 [1989]; *see also Tak Kuen Nagi v Sze Jing Chan*, 159 AD2d 278 [1990]). Indeed, neglect specifically characterized as law office failure has been accepted by the Second Department as good cause for a short delay in submitting an order in accordance with 22 NYCRR 202.48 (*see Levine v Levine*, 179 AD2d 625, 626 [1992]).

In all these situations, the failure to take legal action in compliance with a deadline has been excused on the ground of law office failure. These cases do not hold that law office failure is always a viable excuse, merely that it *may* form the basis of excusing the neglect. Yet, the majority, citing *Brill*, pronounces that law office failure *cannot* constitute good cause for delay within the meaning of 22 NYCRR 202.48. Nowhere does *Brill* so state, however. Indeed, in both *Brill* and *Miceli*, the rulings were based on the fact that *no* excuse for the delay was offered; in both, the movant instead relied solely upon the merits of the motion and the absence of prejudice to the other side.

The rule itself is not absolute; it allows for an extension of time for good cause shown. CPLR 2004, which expressly allows for such an extension even after a rule's time limit has expired, is to the same effect. Unlike *Brill* and *Miceli*, an explanation for the delay was proffered here. Simple law office failure, and counsel's understandable preoccupation with other, more practical and useful aspects of enforcing plaintiff's rights, explain why counsel neglected to enter a $750,000 money judgment in accordance with the dictates of 22 NYCRR 202.48. Whether this explanation satisfies the "good cause" requirement is a question that calls for an exercise of discretion. The majority's insistence that it is constrained to hold against plaintiff here as a matter of law fails to acknowledge all this.

In these circumstances, I would affirm the judgment challenged here.