[898 NE2d 563, 869 NYS2d 380]

Arlene C. Farkas, Appellant-Respondent, v Bruce R. Farkas, Respondent-Appellant.

Argued September 10, 2008; decided October 23, 2008

## POINTS OF COUNSEL

*Robert J. Tolchin,* New York City, for appellant-respondent. I. Bruce Farkas's appeal seeks review of myriad issues beyond the limited scope of his motion for leave to appeal which should not be considered. (*Quain v Buzzetta Constr. Corp.,* 69 NY2d 376.) II. Bruce Farkas's appeal improperly seeks review of factual determinations of the trial judge which were affirmed by the

Appellate Division. III. If Bruce Farkas is granted any modification of the judgment, it should be conditioned on payment of the judgment or posting a bond, as appropriate. IV. The trial court's order regarding the apartment was proper. (*Matisoff v Dobi,* 242 AD2d 495.) V. The trial judge exhibited no hostility to Bruce Farkas. VI. The trial judge did not inject herself into the strategy of this case. VII. The trial court did not make its award based on marital fault.

*Lebow & Sokolow LLP,* New York City (*Mark D. Lebow* of counsel), for respondent-appellant. The Appellate Division correctly held that the trial court should not have signed the judgment for $750,000 in 2005 based on a decision made in 2000, because section 202.48 of the Uniform Rules for the New York State Trial Courts (22 NYCRR 202.48) requires that all judgments must be presented within 60 days of the decision unless there is good cause shown for any delay, and no "good cause" for this five-year-long delay was shown. (*Miceli v State Farm Mut. Auto. Ins. Co.,* 3 NY3d 725; *Brill v City of New York,* 2 NY3d 648; *Andrea v Arnone, Hedin, Casker, Kennedy & Drake Architects & Landscape Architects, P.C. [Habiterra Assoc.],* 5 NY3d 514.)

*Philip F. Alba, P.C.,* West Islip (*Joseph C. Leshen, Philip F. Alba* and *Rita Aniano* of counsel), for respondent-appellant. I. The court erred in granting plaintiff-respondent the total interest in the marital apartment relying on a writing that was not an agreement contemplated by Domestic Relations Law § 236 (B) (3). (*Matisoff v Dobi,* 90 NY2d 127; *Corbin v Litke,* 105 Misc 2d 94; *Rush v Rush,* 19 AD2d 846; *Bennett v Bennett,* 62 AD2d 1154; *Feldman v Feldman,* 204 AD2d 268; *Foppiano v Foppiano,* 166 AD2d 550; *Chase v Chase,* 208 AD2d 883; *Marlinghaus v Marlinghaus,* 202 AD2d 994.) II. The holding of this Court in *Matisoff v Dobi* (90 NY2d 127 [1997]) should be applied retroactively. (*Stuart v New York City Health & Hosps. Corp.,* 7 Misc 3d 225; *Broadnax v Gonzalez,* 2 NY3d 148; *Sheppard-Mobley v King,* 10 AD3d 70.) III. The trial court erred in making a distributive award of 100% of all assets to plaintiff-respondent in lieu of maintenance. (*McCauley v Drumm,* 217 AD2d 829.) IV. The trial court failed to credit defendant-appellant with his separate property interest prior to making any equitable distribution award. V. The marital apartment, as a passive asset, should be valued as of today. (*Weilert v Weilert,* 167 AD2d 463; *Hillmann v Hillmann,* 109 AD2d 777; *NK v MK,* 17 Misc 3d 1123[A], 2007 NY Slip Op 52126[U]; *D'Angelo v*

*D'Angelo,* 14 AD3d 476.) VI. Marital fault shall not be considered a factor in determining equitable distribution except in egregious cases that shock the conscience of the court. (*Blickstein v Blickstein,* 99 AD2d 287; *Weilert v Weilert,* 167 AD2d 463; *McCann v McCann,* 156 Misc 2d 540; *Wenzel v Wenzel,* 122 Misc 2d 1001; *Brancoveanu v Brancoveanu,* 145 AD2d 395; *Rosenberg v Rosenberg,* 126 AD2d 537; *Wilbur v Wilbur,* 116 AD2d 953; *Wilson v Wilson,* 101 AD2d 536; *Havell v Islam,* 301 AD2d 339.) VII. Plaintiff-respondent intentionally concealed her relationship with another man and misrepresented her finances to the court. VIII. The Alexander's stock held in the name of Bruce Farkas was found by the trial court to be the separate property of Bruce Farkas, and thus there could be no dissipation of marital assets. (*Hartog v Hartog,* 85 NY2d 36; *Price v Price,* 69 NY2d 8; *Gluck v Otis,* 265 App Div 244.) IX. The trial court erred in awarding plaintiff money judgments for spousal support arrears because of plaintiff's misrepresentations to the court. (*Getson v Getson,* 91 AD2d 540; *Matter of Carroll v Gammerman,* 193 AD2d 202; *Huebscher v Huebscher,* 206 AD2d 295.) X. The court interjected itself as an advocate for plaintiff, Arlene Farkas. XI. The trial court erred in awarding plaintiff-respondent legal fees. XII. The errors committed by the trial court require a reexamination of the question of marital fault and judicial impartiality.

## OPINION OF THE COURT

READ, J.

These appeals stem from an action for divorce commenced 17 years ago by Arlene C. Farkas (the wife) against her then-husband of 32 years, Bruce R. Farkas (the husband). The wife's divorce action alleged cruel and inhuman treatment and abandonment and requested equitable distribution of property and spousal support, that all remaining property be distributed to her, and that her husband be penalized for dissipation of marital property and egregious conduct. In a decision after trial dated July 17, 1996 (the 1996 decision)—at which time the husband was incarcerated for contempt of court because of his failure to pay pendente lite support—Supreme Court granted the wife a divorce on the ground of cruel and inhuman treatment.

The 1996 decision, which contained numerous findings and conclusions, recounted the husband's claims that he could not find employment, that he relied on his mother for financial support, and that he possessed few assets other than the marital

apartment. Supreme Court found that the wife, who did not work during the parties' marriage, enhanced the husband's business with her social connections, and enabled him to pursue his career by taking care of the household and the couple's two children; that the husband seriously dissipated marital assets; and that, although the wife was entitled to $100,000 per year in lifetime spousal maintenance, the husband would likely never pay, condemning her to "the role of sleuth and detective, always in court." Supreme Court sought to forestall this unpleasant outcome by granting the wife the exclusive right, title and interest in and to, and possession of, the parties' $3.2 million cooperative apartment in Manhattan; all furniture, furnishings, antiques and works of art; all jewelry, collectibles and personal property she owned or had in her possession including stocks, bonds, equities, cash accounts and funds of any description; 50% of any interest or shares the husband might own in Alexander's department store, the family business; and 100% of any remaining IRA, Keogh or other retirement plan or annuity of which the husband was the owner or beneficiary.

The 1996 decision also addressed a debt the parties owed to Chemical Bank, which is central to the wife's appeal here. In 1994, Chemical Bank had commenced a foreclosure action against the husband and wife to recover a debt based on an equity line of credit that the husband had obtained by pledging as security the cooperative shares assigned to the marital apartment. Supreme Court required the husband either to pay all sums due to Chemical Bank and deliver to the wife a satisfaction of the debt and stipulation of discontinuance with prejudice of the foreclosure action; or, alternatively, to pay one half of the sums due to Chemical Bank and deliver to the wife a stipulation of discontinuance with prejudice of a replevin action that the husband's mother had commenced against the wife.[1] "In the event that [the husband] fails to comply with one of these alternatives within 45 days," the court opined, "[the wife] *may enter a money judgment* against [the husband] for the total amount due and owing to Chemical Bank" (emphasis added).

Supreme Court further specified that

> "[o]n condition that [the husband] within 45 days from the date hereof complies with the condition above and pays all outstanding pendente lite sup-

---

1. This lawsuit subsequently went to trial, where the wife obtained a jury verdict in her favor (*see Farkas v Farkas*, 168 F3d 638 [2d Cir 1999]).

port due and owing to [the wife] pursuant to all money judgments which were heretofore entered and remain unpaid along with any interest thereon to date, he is relieved of all obligations to pay spousal maintenance, both retroactive and future[,] and the current order of contempt under which he remains incarcerated will be vacated.

"The distribution of property set forth above, if it is promptly paid[,] is meant to be in lieu of ongoing spousal maintenance . . . . However, if the Chemical Bank debt and outstanding money judgments for spousal maintenance are not paid in full within 45 days of the date hereof[,] this decision may be modified to include additional retroactive spousal maintenance and appropriate ongoing spousal maintenance."

The Court ended its 1996 decision with the instruction to "[s]ettle judgment."

Supreme Court's subsequent judgment dated October 28 and filed December 10, 1996 (the 1996 judgment, which is captioned "COUNTER-JUDGMENT OF DIVORCE") granted the divorce and recited the distribution of property set out in the 1996 decision. Since the husband had not complied with either alternative for discharging his obligation with respect to the Chemical Bank debt, Supreme Court included the following decretal paragraph in the 1996 judgment:

"ORDERED, ADJUDGED and DECREED, [the husband] is directed to pay in full all sums due to Chemical Bank, including interest, penalties, legal fees and other costs and to deliver to [the wife] or her attorneys . . . evidence of satisfaction of the debt and a stipulation of discontinuance with prejudice of the action brought by Chemical Bank. In lieu thereof, at his option [the husband] may pay one-half of all sums due to Chemical Bank and deliver a discontinuance with prejudice of the action for replevin brought by [the husband's mother] against [the wife]. In the event that [the husband] fails to comply with either option within 30 days from the date hereof, [the wife] *shall be entitled to enter a money judgment* against [the husband] for the total

amount due and owing to Chemical Bank *without further order"*[2] (third and fourth emphases added).

The husband appealed. The Appellate Division affirmed, concluding that "[t]he trial court's distribution of all of the known marital assets to [the wife], as well as award of maintenance and counsel fees to [the wife], is amply supported by the record, including proof that [the husband] had repeatedly and willfully disobeyed interim support orders and dissipated marital property" (*Farkas v Farkas*, 251 AD2d 4 [1st Dept 1998]).

An amended judgment of divorce, dated April 14 and filed April 30, 1999 (the 1999 amended judgment), repeated the 1996 judgment's provision regarding the debt to Chemical Bank. Specifically, the 1999 amended judgment reiterated that "[i]n the event that [the husband] fails to comply with either option within thirty (30) days from [the] date hereof, [the wife] shall be *entitled to enter a money judgment* against [the husband] for the total amount due and owing to Chemical Bank *without further order*" (emphasis added).

By order to show cause granted June 8, 2000, the wife sought an "Order . . . [p]ursuant to the Order [*sic*] of this Court dated July 17, 1996, entering a Final Judgment against [the husband] for the sum of $984,401.17, representing the principal sum due Chemical Bank, with interest and penalties." Supreme Court consolidated this motion with an already-pending motion made by the husband and the wife's cross motion, and disposed of all these matters in a decision and order dated October 13 and filed October 17, 2000 (the 2000 decision and order).

In the 2000 decision and order, Supreme Court granted the wife's application "for a money judgment in her favor against [the husband] in the sum of $984,401.17 in respect of the Chemical Bank foreclosure action." In so doing, Supreme Court restated, in its entirety, the relevant decretal paragraph from the 1999 amended judgment, italicizing the final sentence, presumably for emphasis.[3] Immediately thereafter, the court stated that "[t]here [was] no question that [the husband] ha[d] not complied with [this provision of] the Judgment and according to

---

2. The phrase "without further order" was added to the typewritten text in handwriting initialed by the Justice.

3. This is the sentence providing that "[i]n the event that [the husband] fails to comply with either option within thirty (30) days from [the] date hereof, [the wife] shall be *entitled to enter a money judgment* against [the husband] for the total amount due and owing to Chemical Bank *without further order*" (emphasis added).

the unequivocal terms thereof, [*the wife*] *is entitled to the judgment she seeks*" (emphasis added).

At the very end of the 2000 decision and order, Supreme Court set out six paragraphs disposing of the motions and the cross motion. The fifth paragraph provided as follows:

"ORDERED that [the wife's] application . . . for a money judgment in her favor against [the husband] in the sum of $984,401.17 in respect of the Chemical Bank foreclosure action, in addition to the bank's attorneys' fees, is granted and [*the wife*] *may settle the judgment thereon*. Upon [the wife's] suggestion, such judgment shall contain language staying execution thereon pending determination or other disposition of the Chemical Bank foreclosure action" (emphasis added).

In May 2005—4½ years after Supreme Court's 2000 decision and order—the wife served the husband with a notice of settlement and proposed judgment regarding the monies owed Chemical Bank. The proposed judgment stated that the wife and Chemical Bank had settled the foreclosure action for $750,000 in August 2003; accordingly, the proposed judgment against the husband was in the principal amount of $750,000.

The husband opposed entry, citing 22 NYCRR 202.48 (Rule 202.48). Subdivision (a) states that

"[p]roposed orders or judgments, with proof of service on all parties where the order is directed to be settled or submitted on notice, must be submitted for signature, unless otherwise directed by the court, within 60 days after the signing and filing of the decision directing that the order be settled or submitted."

Subdivision (b) specifies that failure to submit the order or judgment as directed within the 60-day time frame constitutes an abandonment of the motion or action except upon "good cause shown" (*see* 22 NYCRR 202.48 [b]).

Supreme Court thereafter signed a paper captioned "ORDER/ JUDGMENT," dated June 20 and filed June 23, 2005 (the 2005 judgment), which stated that the wife had

"duly moved this Court by Order to Show Cause . . . for a money judgment against [the husband] in the amount of $984,401.17, representing the princi-

pal sum due Chemical bank [*sic*] with interest and penalties,

"AND, as to [the wife's] application . . . for a money judgment in her favor and against [the husband] in the amount of $984,401.17, in respect to the Chemical Bank foreclosure action, in addition to the bank's attorney's fees, was granted. Furthermore, the Chemical Bank foreclosure action was resolved by Stipulation of Settlement between [the wife] and Chemical Bank for [$750,000] on or about August 6, 2003,

"NOW, after reading said Cross-Motion and Order to Show Cause and the [2000 order], . . .

"IT IS HEREBY ORDERED, that [the wife's] application . . . is granted in that a Money Judgment is hereby granted in favor of [the wife] . . . against [the husband] . . . in the amount of $750,000.00 with interest from August 6, 2003, and that [the wife] shall have execution therefor[ ]."

After the husband appealed, the Appellate Division, with two Justices dissenting, reversed the judgment on the law, vacated it, and dismissed the underlying claim as abandoned pursuant to Rule 202.48. Citing our decisions in *Brill v City of New York* (2 NY3d 648 [2004]) and *Miceli v State Farm Mut. Auto. Ins. Co.* (3 NY3d 725, 726 [2004]), the majority considered itself "constrained to reverse and vacate" because the wife failed to provide any explanation for her untimely submission of the proposed judgment other than "law office failure" (*Farkas v Farkas*, 40 AD3d 207, 207, 211 [2007]). While acknowledging "that there was arguably good cause for delaying settlement of the judgment until after the Chemical Bank foreclosure action was settled in August 2003," the majority concluded that "the record reveals no justification for [the wife's] failure to submit a judgment for an additional year and nine months thereafter" (*id.* at 209).

The dissenting Justices acknowledged that Rule 202.48 required the wife to show good cause for not timely settling judgment. They asserted, however, that "the complex matrix of litigation between and involving these former spouses is the framework in which . . . a satisfactory explanation" for the delay could be found (*id.* at 214). Because Supreme Court "was intimately familiar with the parties' litigation history," the dis-

senting Justices would have deferred to the trial court's discretionary determination that good cause existed (*id.*). Crucially, they also pointed out that both the 1996 judgment and the 1999 amended judgment "authorized [the wife] to enter a money judgment against [the husband] for the total amount due and owing to Chemical Bank *without further order*" (*id.* at 215).

The wife appealed the Appellate Division's May 2007 order to us as of right, based on the dual dissent (*see* CPLR 5601 [a]). The husband sought leave to appeal from the same order, which we granted. His appeal brings up for review the Appellate Division's June 1998 order affirming the 1996 judgment (*see* CPLR 5501 [a] [1]). We now reverse the Appellate Division's May 2007 order, and uphold its June 1998 order.

■ The 1996 judgment and the 1999 amended judgment unquestionably were not subject to Rule 202.48's 60-day requirement. These judgments carried out the 1996 decision, which directed the parties to "[s]ettle judgment." Moreover, the decretal paragraph specifically addressing the Chemical Bank monies provided that the wife was "*entitled to enter a money judgment* against [the husband] for the total amount due and owing to Chemical Bank *without further order*" (emphasis added). That is, this paragraph set out a "simple judgment for a sum of money which speaks for itself," and therefore falls outside the ambit of Rule 202.48 (*Funk v Barry*, 89 NY2d 364, 367 [1996]). As we emphasized in *Funk*, the "settle" or "submit" trigger for the 60-day limitation of Rule 202.48 (a) "does not purport to govern the flow of the entry process, which is a ministerial recording function that is separate and distinct from the procedure of obtaining the court's signature on a proposed judgment" (89 NY2d at 368 [citations omitted]). And to further drive home the point that no further court action was, in fact, contemplated or required with respect to the monies owed Chemical Bank, Supreme Court added the phrase "without further order" to the typewritten text of the proposed counterjudgment submitted in 1996.

Nonetheless, the wife's attorney moved for an order to show cause allowing the wife to enter a judgment against the husband for the Chemical Bank monies, even though she was already entitled to this relief—without a limitations period—under the plain terms of the 1999 amended judgment and *Funk* (*see* 89 NY2d at 368 ["Significantly, the Legislature has chosen *not to place a time restriction on the completion of entry*" (emphasis

added)]). This unnecessary motion led to the discussion in the 2000 decision and order in which Supreme Court stated—for the third time—that the wife was entitled to the monies owed Chemical Bank without further order, and then unaccountably ordered the wife to "settle . . . judgment" for this very relief. Rule 202.48 cannot deprive a party of a judgment where it has been improperly or unnecessarily invoked in the first place.

■ Finally, the husband argues in his appeal that Supreme Court punished him for his infidelity and did not make sufficient findings of economic fault to warrant distributing all the marital assets to the wife. We cannot say, however, that Supreme Court abused its discretion as a matter of law when distributing the marital property. Indeed, the record fully supports Supreme Court's affirmed findings and conclusions of law.

Accordingly, on the appeal of Arlene C. Farkas, the order of the Appellate Division should be reversed, and the order and judgment of Supreme Court reinstated, and on the appeal of Bruce R. Farkas, the order of the Appellate Division, insofar as it brings up for review a prior order of that court, should be affirmed, with one bill of costs to Arlene Farkas.

PIGOTT, J. (dissenting on the appeal by Arlene Farkas). The majority concludes that "Rule 202.48 cannot deprive a party of a judgment where it has been improperly or unnecessarily invoked in the first place" (majority op at 310). While I agree with this principle, I believe that Supreme Court's 2000 decision and order directing Arlene Farkas (the wife) to "settle . . . judgment" did, indeed, fall within the ambit of 22 NYCRR 202.48 (see Funk v Barry, 89 NY2d 364, 365 [1996]). Thus, even accepting as true the majority's position that the 1996 judgment and 1999 amended judgment were not subject to Rule 202.48, the 2000 order in my view was, triggering the wife's obligation to submit an order within 60 days. Because I cannot agree with the majority's analysis of Rule 202.48, I respectfully dissent with respect to the wife's appeal. I also disagree, however, with the approach taken by the Appellate Division.

When a trial court directs a party to "settle" or "submit" an order and that party, without good cause, fails to do so within 60 days, Rule 202.48 instructs a court to deem abandoned the "motion or action" in response to which the court directed submission of the order (22 NYCRR 202.48 [b]). It does not follow, however, that the party may not renew its motion and cure the untimeliness of its proposed order. The Appellate Division

majority concludes that the rule was intended to deprive a party of a substantive victory. However, in my view, the proper function of Rule 202.48 is to facilitate and quicken the disposition of cases that require court approval of an order drafted by the parties (*see Funk*, 89 NY2d at 368), by providing a timetable whereby a specific motion will be deemed abandoned, if late. Its purpose is not to deprive a party of any underlying relief or threaten her with that loss. Nor does our decision in *Brill v City of New York* (2 NY3d 648 [2004]) dictate a contrary conclusion.

A hypothetical best illustrates my view. Suppose plaintiff sues defendant, alleging a Labor Law § 240 violation resulting in injury. Plaintiff, who intended to move for summary judgment, commits a *Brill* violation and misses the 120-day deadline of CPLR 3212 (a). The motion for summary judgment will not be entertained, with the result being a good deal of inconvenience and the expense of a liability trial that could have been avoided (*see Brill*, 2 NY3d at 653). Plaintiff's victory will be delayed, but it will not be forfeited. And why should it be, since plaintiff was entitled to judgment as a matter of law?

Now vary the scenario, so that plaintiff's attorney timely files and wins a motion for summary judgment establishing that defendant violated Labor Law § 240 and that the violation proximately caused plaintiff's injuries, and the trial court directs plaintiff to submit an order. Through law office oversight, plaintiff's counsel fails to submit the order within the 60-day deadline of Rule 202.48. Time passes, and counsel finally discovers the error. Plaintiff moves again for judgment, attaching a copy of the original decision granting summary judgment and an affidavit noting the error but giving no valid explanation, having no excuse for the untimeliness. If Rule 202.48 operates to vitiate a judgment, as the Appellate Division majority proposes, then after plaintiff fails to timely submit a proposed order, the trial court must not only deny plaintiff's motion but also dismiss a valid claim established before the court as a matter of law.

A similar paradox would emerge when plaintiff's case is patently meritless and defendant wins summary judgment but fails to submit the order within the 60-day deadline of Rule 202.48. Professor David Siegel notes the resulting dilemma. "Should such a case now be tried, even though it has been judicially determined that there is nothing to try? Does the abandonment mean to turn things around 180 degrees, so as to declare summary judgment for the opposing side, the one that

lost on the motion?" (Siegel, NY Prac § 251, at 428 [4th ed], discussing *Feldman v New York City Tr. Auth.*, 171 AD2d 473 [1st Dept 1991].) I think not. "[T]he interests of justice demand that the court not be burdened with the trial of a demonstrably meritless action. A contrary result would not bring the repose to court proceedings that [Rule] 202.48 was designed to effectuate, and would waste judicial resources." (*Russo v City of New York*, 206 AD2d 355, 356 [2d Dept 1994] [citations and internal quotation marks omitted]; *accord Russell Kikenborg v New York City Health & Hosps. Corp.*, 291 AD2d 281 [1st Dept 2002].)

The Appellate Division majority creates an irrational distinction between a party who fails to meet a CPLR 3212 (a) deadline and one who misses a Rule 202.48 deadline. Whereas the party who runs afoul of *Brill* will receive an adjudication that is at worst redundant, the party who has already won on the merits but misses a Rule 202.48 deadline hands a substantive victory to his opponent. *Brill* threatens an untimely summary judgment movant with the expense and inconvenience of a trial, but the deterrent object of *Brill* is tempered with justice: no party forfeits substantive rights. Under the Appellate Division's application of *Brill* to Rule 202.48, however, a party who has won a right to a judgment must forfeit that right, and has no opportunity to regain it, in the event his or her attorney inadvertently delays submission of the pertinent order.

In the present case, the wife, who has been granted a money judgment in her favor in the amount of $750,000, plus interest, would, under the Appellate Division analysis, lose her judgment. She would suffer that loss simply because her counsel—focused on enforcing other long-outstanding money judgments against her duplicitous ex-husband, who had fled from New York, "condemning her to 'the role of sleuth and detective, always in court' " (majority op at 304)—delayed in serving a proposed order. Such an unbending doctrine and harsh result do not reflect the intent of Rule 202.48. What the wife should lose is the time and expense necessary to duplicate her attorney's efforts—resulting, perhaps, in a lesser priority for her judgment or in a lost opportunity to execute on certain assets of the defendant—but certainly not what the courts have substantively found to be her right.

I would hold that the wife abandoned the motion that Supreme Court decided in her favor in October 2000, by waiting until May 2005 to submit her proposed order, but she did not abandon her substantive right to a judgment. Therefore I would

modify the order of the Appellate Division, affirming insofar as the Appellate Division reversed the order and judgment of Supreme Court awarding the wife $750,000, plus interest, but reversing so much of the order as dismissed the claim underlying the wife's judgment as abandoned, and would dismiss the motion on which the order and judgment were entered without prejudice to any future application by plaintiff for similar relief.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur on the appeal by Bruce Farkas.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and JONES concur with Judge READ on the appeal by Arlene Farkas; Judge PIGOTT dissents on the appeal by Arlene Farkas and votes to modify in a separate opinion in which Judge SMITH concurs.

On the appeal by Arlene Farkas, order reversed and order and judgment of Supreme Court, New York County, reinstated, and on the appeal by Bruce Farkas, order, insofar as it brings up for review a prior Appellate Division order, affirmed, with one bill of costs payable to Arlene Farkas.