# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**628**

**CA 12-01411**

PRESENT: SCUDDER, P.J., PERADOTTO, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

EDWARD A. LEGARRETA, M.D., PLAINTIFF-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

MELISSA A.L. NEAL, M.D., AND TWENTY 20 EYE CARE
AND AESTHETIC OCULOPLASTIC MEDICINE, PLLC,
DEFENDANTS-APPELLANTS.
------------------------------------------------
MELISSA NEAL, M.D., PLAINTIFF-APPELLANT,

V

EDWARD A. LEGARRETA, M.D., LEGARRETA EYE CENTER,
AND SALLY LEGARRETA, DEFENDANTS-RESPONDENTS.
(APPEAL NO. 2.)

---

MYERS, QUINN & SCHWARTZ, LLP, WILLIAMSVILLE (JAMES I. MYERS OF
COUNSEL), FOR DEFENDANTS-APPELLANTS AND PLAINTIFF-APPELLANT.

JAECKLE FLEISCHMANN & MUGEL, LLP, BUFFALO (BRADLEY A. HOPPE OF
COUNSEL), FOR PLAINTIFF-RESPONDENT AND DEFENDANTS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Erie County (John A. Michalek, J.), entered January 25, 2012. The order, among other things, directed that the answer of defendants-appellants shall be stricken if a patient list was not produced by February 1, 2012.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: These four appeals arise out of two consolidated actions. Edward A. Legarreta, M.D. commenced the first action against Melissa A.L. Neal, M.D. and Twenty 20 Eye Care and Aesthetic Oculoplastic Medicine, PLLC (Twenty 20) (collectively, defendants) seeking damages for, inter alia, Dr. Neal's alleged breach of her employment contract with Dr. Legarreta and misappropriation of trade secrets (hereafter, contract action). Dr. Neal thereafter commenced the second action against Dr. Legarreta, Sally Legarreta (Sally), who is Dr. Legarreta's wife, and the Legarreta Eye Center (collectively, Legarretas) seeking damages for, among other things, injuries she allegedly sustained as a result of an assault by Sally (hereafter, personal injury action). In appeal No. 1, defendants, as limited by their brief, appeal from an order insofar as it granted that part of Legarretas' motion seeking to compel defendants to produce a complete

list of all of Dr. Neal's patients in the contract action, and authorizations for the release of medical records relating to her neck, shoulder, arm, wrist, and hand in the personal injury action. In appeal No. 2, defendants, as limited by their brief, appeal from an order insofar as it granted that part of Legarretas' motion seeking an order striking defendants' answer in the contract action in the event that defendants failed to produce a complete patient list by February 1, 2012.  In appeal No. 3, defendants appeal from an order and judgment that, inter alia, granted that part of Legarretas' motion for a default judgment against defendants in the contract action pursuant to the self-executing order in appeal No. 2.  In appeal No. 4, Dr. Neal appeals from an order and judgment granting that part of the Legarretas' motion to strike her complaint in the personal injury action.

Initially, we note that appeal No. 1 must be dismissed inasmuch as the underlying order was superseded by the order in appeal No. 2 (see Wall v Villa Roma Resort Lodges, Inc., 299 AD2d 351, 351; see generally Matter of Eric D. [appeal No. 1], 162 AD2d 1051, 1051). With respect to the remaining appeals, CPLR 3126 provides that "[i]f any party . . . refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed . . . , the court may make such orders with regard to the failure or refusal as are just," including "an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party" (CPLR 3126 [3]).  "Generally, the nature and degree of the penalty to be imposed pursuant to CPLR 3126 against a party who refuses to comply with court-ordered discovery is a matter within the discretion of the court" (Mahopac Ophthalmology, P.C. v Tarasevich, 21 AD3d 351, 352; see Kihl v Pfeffer, 94 NY2d 118, 123; Sugar Foods De Mexico v Scientific Scents, LLC, 88 AD3d 1194, 1196; Hill v Oberoi, 13 AD3d 1095, 1096).  The language in CPLR 3126 that "permits courts to fashion orders as are just . . . broadly empowers a trial court to craft a conditional order—an order that grants the motion and imposes the sanction unless within a specified time the resisting party submits to the disclosure" (Gibbs v St. Barnabas Hosp., 16 NY3d 74, 79 [internal quotation marks omitted]; see Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3126:10).

We conclude with respect to appeal No. 2 that Supreme Court properly exercised its discretion in granting a conditional order striking the answer in the contract action unless defendants produced Dr. Neal's patient list by February 1, 2012 (see Pugliese v Mondello, 67 AD3d 880, 881, lv dismissed 14 NY3d 873).  Dr. Legarreta first demanded the patient list in July 2011 and, despite two motions to compel, Dr. Neal failed to turn over her patient list.  In a bench decision dated December 1, 2011, the court directed Dr. Neal to produce "a complete list of all of her patients, including names, addresses and dates of treatment, . . . by December 22, 2011," and specifically instructed the Legarretas that they could move to strike defendants' answer in the contract action in the event Dr. Neal failed to comply.  That decision was reduced to an order entered December 19,

2011, i.e., the order in appeal No. 1 (hereafter, December 2011 order).

Defendants, however, failed to produce a patient list by the court-imposed deadline, and the Legarretas moved to strike defendants' answer based upon defendants' willful violation of the December 2011 order. In a bench decision dated January 12, 2012, the court determined that Dr. Neal intentionally violated the December 2011 order inasmuch as she provided no basis for her failure to produce the patient list. By order entered January 25, 2012, i.e., the order in appeal No. 2, the court directed that defendants' answer in the contract action would "be stricken immediately" if they did not produce the patient list "on or before February 1, 2012" (hereafter, January 2012 conditional order).

On February 1, 2012, the deadline set forth in the January 2012 conditional order, defendants sought a stay from a justice of this Court pending their appeal from the December 2011 order and the January 2012 "decision." Although a justice of this Court signed a temporary stay of enforcement, it thereafter became apparent that defendants had not filed a notice of appeal from the January 2012 conditional order and thus that this Court had no jurisdiction to grant relief with respect to that order (see CPLR 5519 [c]). Defendant's appeal from the December 2011 order had been rendered moot by the subsequent order, as noted above. Inasmuch as the temporary stay had no effect on the January 2012 conditional order, which was self-executing, defendants' answer was stricken when they failed to produce the patient list by February 1, 2012 (see Gibbs, 16 NY3d at 82-83; Foster v Dealmaker, SLS, LLC, 63 AD3d 1640, 1641, lv denied 15 NY3d 702; Zouev v City of New York, 32 AD3d 850, 850-851). Even assuming, arguendo, that the temporary stay extended the deadline for compliance with the conditional order, we conclude that the January 2012 conditional order became absolute when defendants failed to turn over the patient list immediately upon the expiration of the stay.

It is well established that, in order to "obtain relief from the dictates of a conditional order . . . , the defaulting party must demonstrate (1) a reasonable excuse for the failure to produce the requested items and (2) the existence of a meritorious claim or defense" (Gibbs, 16 NY3d at 80). Here, defendants failed to establish a reasonable excuse for their failure to comply with the conditional order (see Lee v Arellano, 18 AD3d 620, 621; cf. Zouev, 32 AD3d at 850). Notably, defendants had almost seven months within which to comply with the Legarretas' demand for Dr. Neal's patient list. As noted above, the court first ordered Dr. Neal to turn over the patient list in December 2011. Instead of seeking an extension of time to comply with that order or a stay of enforcement thereof, defendants simply ignored the court-ordered deadline. With respect to the January 2012 conditional order, defendants did not produce the patient list as ordered by February 1, 2012 and, instead, waited until that date to make a defective stay application.

Although defendants contend that Dr. Neal's failure to turn over the patient list by February 1, 2012 was not willful or contumacious,

it is well settled that, "where a conditional order ha[s] previously been entered based on the court's findings that a party ha[s] caused delay and failed to comply with the court's discovery orders, the court [i]s not required to find that [the defaulting party]'s conduct in failing to comply with the conditional order was 'willful' " (*Keller v Merchant Capital Portfolios, LLC*, 103 AD3d 532, 533; *see Gibbs*, 16 NY3d at 82; Siegel, NY Prac § 367 at 608 [4th ed 2005]).  In any event, the court here concluded that "the uncontradicted evidence shows that this time Dr. Neal's refusal to comply with the Court's order was indeed willful and contumacious."

Inasmuch as defendants failed to demonstrate a reasonable excuse for their violation of the conditional order, we conclude with respect to the order and judgment in appeal No. 3 that the court properly granted Legarretas' motion for entry of a default judgment against defendants on all of the remaining causes of action in the contract action (*see Keller*, 103 AD3d at 533; *Sugar Foods De Mexico*, 88 AD3d at 1196; *Callaghan v Curtis*, 48 AD3d 501, 502; *cf. Gibbs*, 16 NY3d at 83).

We conclude with respect to appeal No. 4 that the court did not abuse its discretion in striking Dr. Neal's complaint in the personal injury action based upon her failure to disclose prior treatment for injuries to her neck and left arm.  It is well settled that "[w]hile the nature and degree of the penalty to be imposed on a motion pursuant to CPLR 3126 is a matter of the Supreme Court's discretion, striking a pleading is appropriate [only] where there is a clear showing that the failure to comply with discovery demands is willful, contumacious, or in bad faith" (*Hill*, 13 AD3d at 1096 [internal quotation marks omitted]; *see Luppino v Mosey*, 103 AD3d 1117, 1119; *Hann v Black*, 96 AD3d 1503, 1504).  "The willful or contumacious character of a party's conduct can be inferred from the party's repeated failure to respond to demands or to comply with discovery orders" (*Flynn v City of New York*, 101 AD3d 803, 805; *see Doherty v Schuyler Hills, Inc.*, 55 AD3d 1174, 1176).  "Once a moving party establishes that the failure to comply with a disclosure order was willful, contumacious or in bad faith, the burden shifts to the nonmoving party to offer a reasonable excuse" (*Hann*, 96 AD3d at 1504-1505 [internal quotation marks omitted]).

Here, we conclude that the Legarretas established that Dr. Neal's failure to disclose her prior treatment was willful or contumacious based upon her repeated failure to produce requested medical authorizations and defendants' overall pattern of noncompliance in both the contract and personal injury actions (*see Doherty*, 55 AD3d at 1176; *see generally Hann*, 96 AD3d at 1505; *Hill*, 13 AD3d at 1096). The Legarretas first requested authorizations for "all medical and hospital records relating to the physical condition of [Dr. Neal] as set forth in the plaintiff's complaint" in July 2011.  After the Legarretas made a motion to compel, Dr. Neal produced authorizations that were limited to treatment she received after June 12, 2009, the date of the alleged assault.  The Legarretas thereafter demanded production of "all of Dr. Neal's medical records, *without any kind of temporal limitation*, relating in any way to her neck and the arm, wrist and hand that are the subject of this action" (emphasis added).

The Legarretas noted in correspondence with counsel for defendants that "Dr. Neal obviously treated with other physicians prior to June 12, 2009, including physicians in the locations she lived in prior to coming to Buffalo in 2006, including . . . Pennsylvania . . . We need authorizations from all such physicians, without any kind of temporal limitation, relating in any way to her neck and the arm, wrist and hand that are the subject of this action."

When defendants failed to provide the requested authorizations, the Legarretas filed another motion to compel in November 2011 seeking to strike defendants' complaint in the personal injury action unless Dr. Neal produced "complete medical authorizations for each and every physician she has treated with regarding injuries to her neck, shoulder, arm, wrist and hand that [were] the subject of th[at] action." The court granted the Legarretas' motion and ordered Dr. Neal to produce authorizations for the disclosure of all of her "adult medical records, i.e.[,] after her 21st birthday," relating to any treatment of her neck, shoulder, arm, wrist, and hand, both before and after the incident. In response, Dr. Neal provided revised authorizations that were again limited to medical providers she treated with after the date of the incident. In a January 2012 affirmation, Dr. Neal averred that she had produced authorizations concerning "all medical records since [she] was 21 years of age for treatment related to [her] 'neck, shoulder, arm, wrist and hand.' " Further, in a January 2012 deposition, Dr. Neal unequivocally testified that she experienced no symptoms and sought no medical treatment with respect to her left shoulder, arm, wrist, or hand prior to the June 12, 2009 incident, including during the four years she attended medical school in Pennsylvania.

Notwithstanding Dr. Neal's assertion, the Legarretas requested medical authorizations for doctors she treated with in Pennsylvania. In May 2012, Dr. Neal's new attorney finally provided the requested authorizations. The medical records produced thereto revealed that, despite her sworn assertions to the contrary, Dr. Neal had indeed sought treatment for her neck and left arm prior to the incident at issue. In November 1996, Dr. Neal went to two different emergency rooms on three consecutive days after she was involved in a motor vehicle accident. Although Dr. Neal asserted that she simply "did not recall" those three hospital visits, we conclude that the court did not abuse its discretion in rejecting her excuse, particularly in light of a similar situation that occurred in 2011 in the contract action.

We thus conclude that the court did not abuse its discretion in determining that Dr. Neal's failure to reveal her prior injuries and her attempts to frustrate the Legarretas' access to relevant medical records was willful and contumacious, and that her alleged inability to recall those prior injuries did not constitute a reasonable excuse (*see Hill*, 13 AD3d at 1096; *see also Arpino v F.J.F. & Sons Elec. Co., Inc.*, 102 AD3d 201, 208-209; *Roug Kang Wang v Chien-Tsang Lin*, 94 AD3d 850, 852; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Global Strat Inc.*, 94 AD3d 491, 492). The court therefore properly exercised its discretion in striking Dr. Neal's complaint in the personal injury

action (*cf. Hill*, 13 AD3d at 1096).