■ JAMES MORRIS and Another, Individually and as Administrators with Letters of Administration with Limitations of the Estate of KRISTY L. MORRIS, Also Known as KRISTY LOUISE MORRIS, Deceased, Appellants, v ONTARIO COUNTY, Respondent, et al., Defendants. (Appeal No. 2.) [58 NYS3d 830]—

Appeal from an amended order of the Supreme Court, Ontario County (Frederick G. Reed, A.J.), entered June 2, 2016. The amended order granted the motion of defendant Ontario County for summary judgment dismissing the complaint against it and denied as moot the cross motion of plaintiffs for partial summary judgment against defendant Ontario County.

It is hereby ordered that the amended order so appealed from is unanimously modified on the law by denying the motion of defendant Ontario County and reinstating the complaint against it, and as modified the amended order is affirmed without costs.

Memorandum: Plaintiffs, individually and as administrators of the estate of Kristy L. Morris, also known as Kristy Louise Morris (decedent), commenced this negligence action following a motor vehicle accident. Decedent was operating her vehicle on County Route 41 when the vehicle traveled off the road and hit the guide rail on Fish Creek Bridge in the Town of Victor. The guide rail system was installed during a 2005 renovation project of County Route 41. Defendant Ontario County (County), the owner of the road, hired defendant Ramsey Constructors, Inc. (Ramsey), as the project contractor and defendant Phelps Guide Rail, Inc. (Phelps), as the subcontractor for the installation of the guide rails. Defendant FRA Engineering, P.C. (FRA), was the engineer on the project.

The original design plans by FRA for the project called for a guide rail on Fish Creek Bridge to be installed with Type I box beam end assemblies, which meant that the end points of the rail were sloped downward and flared away from the road. The plans were later modified, however, and a Type II end assembly was installed on one end. The Type II end assembly is sloped and straight and does not flare from the road. The decedent's

vehicle struck the Type II end of the guide rail, causing her vehicle to launch in the air, rotate for a distance of 90 feet, and finally stop in the creek below. The decedent died shortly thereafter.

As an initial matter, we note that appeal Nos. 1 and 3 must be dismissed inasmuch as the underlying orders in those appeals were superseded by later orders (*see Legarreta v Neal*, 108 AD3d 1067, 1068 [2013]).

With respect to appeal No. 2, plaintiffs appeal from an amended order granting the motion of the County for summary judgment dismissing the complaint against it and denying as moot plaintiffs' cross motion against the County for summary judgment on the issue of liability. We agree with plaintiffs that Supreme Court erred in granting the motion, and we therefore modify the amended order accordingly. We conclude that the County failed to meet its initial burden of establishing its entitlement to summary judgment based on qualified immunity (*see Betts v Town of Mount Morris*, 78 AD3d 1597, 1598 [2010]). In particular, the County failed to establish that the decision to change the end assembly of the guide rail from a Type I to a Type II end assembly was "the product of a deliberative decision-making process, of the type afforded immunity from judicial interference" (*id.*, citing *Appelbaum v County of Sullivan*, 222 AD2d 987, 989 [1995]). Rather, the record reflects that the decision to change the guide rail end assembly was made after Phelps conducted a walk-through and learned that the owners of a hay field needed a "field drive" to allow them to access County Route 41. Although the County submitted evidence that the change order completed by Phelps was signed by FRA, there is no showing by the County that there was prior input from FRA regarding the change and, importantly, no analysis to support the decision for the change. Moreover, although the County contended on its motion that it followed the requisite standards of the New York State Department of Transportation, we note that the County's expert erroneously combined the criteria for two separate uses of Type II end assemblies into one standard.

We reject the contention of the County, advanced as an alternative ground for affirmance in appeal No. 2, that it cannot be held liable because it did not receive written notice of the dangerous condition or defect. Plaintiffs allege that the County affirmatively created the alleged dangerous condition or defect by, among other things, negligently changing the design plans and installing the Type II end assembly, as well as omitting an additional guide rail. It is well settled that the

prior notice requirement does not apply where a tortfeasor's negligent design or construction creates a dangerous condition or defect (*see Hughes v Jahoda*, 75 NY2d 881, 882-883 [1990]).

We further conclude that there are questions of fact whether the County's alleged negligence with respect to the change in the end assembly was a proximate cause of the accident and, thus, neither the County nor plaintiffs are entitled to summary judgment on the issue of proximate cause (*see Ferguson v Sheahan*, 71 AD3d 1207, 1210 [2010]).

In appeal No. 4, plaintiffs appeal from an amended order granting the motion of Ramsey for summary judgment dismissing the complaint against it, and granting the motion of Phelps for summary judgment dismissing the complaint against it. There is no dispute that the decedent was not a party to any contract between the County and Ramsey or Phelps, and therefore they owed no contractual duty to the decedent (*see Petito v City of New York*, 95 AD3d 1095, 1096 [2012]). Further, the contract provided that all the work was under the direction of and subject to complete approval by the County. Accordingly, neither Phelps nor Ramsey had final authority regarding the ultimate installation of the guide rail at issue (*see Davies v Ferentini*, 79 AD3d 528, 530 [2010]). In the absence of any duty, contractual or otherwise, the court properly dismissed the complaint against Ramsey and Phelps. Contrary to plaintiffs' contention, the *Espinal* exception concerning the launching of a force or instrument of harm does not apply to this case (*see Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002]; *Anderson v Jefferson-Utica Group, Inc.*, 26 AD3d 760, 760-761 [2006]). Present—Lindley, J.P., DeJoseph, NeMoyer and Curran, JJ.