OPINION OF THE COURT
Allen Hurkin-Torres, J.
*510 In Katz v City of New York (87 NY2d 241 [1995]), the Court of Appeals held that, where a plaintiff seeks to establish prior written notice of a sidewalk defect via a map filed by the Big Apple Pothole and Sidewalk Protection Committee, Inc., it “is the most recent map received from Big Apple prior to an accident” that is controlling (id. at 244). That holding was premised, in large part, upon the uncontradicted testimony that it is Big Apple’s policy that subsequent successor maps supercede earlier maps (id.). The question presented here is whether the rule set forth in Katz applies where the subsequently filed map specifically contains a notation that it does not supercede any previously filed map. For the reasons that follow, I conclude that, even if the most recent Big Apple map indicates that it does not supercede a previously filed map, the most recently filed map nevertheless controls.
On December 4, 1996, plaintiff was allegedly injured as a result of a defect in a sidewalk located on the north side of Bay Ridge Parkway near its intersection with 19th Avenue in Brooklyn, New York. As a result, plaintiff commenced this action against, among others, the City of New York.
Seeking summary judgment dismissing this action, the City asserts that the Big Apple map filed closest in time to plaintiffs accident, namely, a map dated March 4, 1996, fails to contain any markings indicating a defect where plaintiff was allegedly injured, an assertion that is not genuinely in dispute. This being so, the City asserts that dismissal is warranted.[1]
In opposing the motion, plaintiff notes that the March 4, 1996 Big Apple map relied upon by the City contains a stamp that states: “THIS MAP DOES NOT SUPERCEDE ANY PREVIOUSLY FILED NOTICE OF A DEFECTIVE, UNSAFE DANGEROUS OR OBSTRUCTED CONDITION.”
Plaintiff then points to an earlier Big Apple map, which was filed with the City on January 13, 1995, that allegedly contains notice of the defect that caused plaintiffs injury.[2] Additionally, plaintiff presents an affidavit from Andrea Kinloch, the assistant director of Big Apple. In that affidavit, Ms. Kinloch states that:
“At no time did Big Apple intend that a prior map *511 was superceded by any subsequent maps filed with the City.
“At no time has anyone been authorized by Big Apple to indicate that our earlier maps are super-ceded by any subsequent maps which we file.
“We now include a notation on our maps to that effect, which procedure was started approximately in the middle of 1996.”
With this factual background, I turn to the applicable law.
“[P]rior written notice of a [sidewalk or street] defect is a condition precedent which plaintiff is required to plead and prove to maintain an action against the City” (Katz, 87 NY2d at 243; Administrative Code of City of NY § 7-201 [c]). A Big Apple map may serve as prior written notice for the defective conditions indicated on the map (id.; Quinn v City of New York, 305 AD2d 570, 571 [2003]; Weinreb v City of New York, 193 AD2d 596, 598 [1993]). As noted previously, however, the Court of Appeals in Katz held that it is the map filed with the City closest in time to the accident that controls for purposes of estabhshing prior written notice (Katz, 87 NY2d at 243-244). The question therefore becomes the legal implications flowing from Katz and its progeny under the circumstances presented here. In resolving this question, closer scrutiny of the facts in Katz must be the starting point.
During the trial at issue in Katz, plaintiff relied upon a June 5, 1986 Big Apple map that depicted a defect at the location of plaintiff’s fall {id. at 243). The City, however, submitted a subsequent map that was filed prior to plaintiffs accident that did not show a defect at the relevant location {id.). In addition, the City presented unrefuted testimony of a city employee that a later map filed by Big Apple supercedes a previously filed map {id. at 244).
Grasping these facts, the plaintiff in this action contends that Katz is not controlling since here, unlike Katz, there is (a) uncontroverted evidence via the assistant director of Big Apple that it does not intend subsequent maps to supercede prior maps, and (b) the subsequently filed map at issue here specifically contained a stamp indicating that it did not supercede prior maps.
As to the subjective intent of Big Apple not to supercede prior maps with subsequent maps, it is clear that Big Apple’s subjective intent is an irrelevancy. In this regard, Dallal v City of New York (257 AD2d 354 [1999]) is dispositive. In Dallal, the Appellate Division, First Department, stated that:
*512 “Despite the attempt of the Director of [Big Apple] to refute the factual premise underlying such decision, the holding of the Court of Appeals in [Katz] that it is a ‘reasonable expectation in the event two Big Apple maps depict the same area and both predate [the] accident, the later dated map most accurately portrays the area on the date of the accident’ is controlling and dispositive of plaintiff’s cause of action against the City as well as the City’s third-party action” (Dallal, 257 AD2d at 355).
The record on appeal in Dallal reveals that the Court had before it an affidavit from the director of Big Apple, like the one here, stating that subsequent maps are not intended to supercede earlier maps. As is evident, the Court held that the Katz decision controls notwithstanding the subjective, intent of Big Apple. I additionally note that other Appellate Division decisions have reached the same conclusion as Dallal, albeit that the facts underpinning these decisions are only revealed by examination of the respective records on appeal (see Lane v City of New York, 274 AD2d 417 [2000]; Kempler v City of New York, 272 AD2d 584, 584-585 [2000]; Civello v City of New York, 255 AD2d 353, 354 [1998]; Halali v City of New York, 253 AD2d 849 [1998], lv dismissed in part and denied in part 92 NY2d 1023 [1998]; Frank v City of New York, 240 AD2d 198 [1997]).[3]
Thus, the only remaining issue is whether Katz has continuing vitality in the face of the maps now filed with the City, which as noted, contain a stamp explicitly stating that the current map does not supercede any prior map. While it does not appear that this precise issue has been directly addressed by the Appellate Division or the Court of Appeals, the answer to the question actually resides within the Katz decision itself.
Undoubtedly, the Court in Katz placed great emphasis on the uncontroverted trial testimony offered by the City that subsequently filed maps were intended to supercede earlier filed maps. However, the Court went on to note that policy considerations were also at play in its decision, stating:
“We conclude that the City properly requires that prior notice be traced to the most current Big Apple map on file, i.e., the map that is closest in time to *513 the date a defect is alleged to have caused an accident. Given the Department of Transportation’s mandate to maintain all written notices for three years from the date of receipt and thereafter preserve them in the municipal archives for not less than 10 years (see, Administrative Code § 7-201 [c] [3]), a policy that traces notice to the latest dated map diminishes the potential for an arbitrary, selective search of recorded notices. As a practical matter, such a policy is logical based not only on the mechanics of Big Apple’s filing system but also on the reasonable expectation that in the event two Big Apple maps depict the same area and both predate plaintiff’s accident, the later dated map most accurately portrays the area on the date of the accident, factors the dissent fails to address ....
“Finally, it is of no legal consequence that the City did not present any records documenting a repair in the area in question since plaintiff failed to satisfy a condition precedent necessary to proceed with this action” (Katz at 244-245).
The policy considerations identified by the Court of Appeals in Katz are as sound today as they were a decade ago. Whether a Big Apple map is stamped as here, or barren of such a stamp as in Katz, the intertwined concerns relating to the mechanics of the filing system, the reasonable expectations of the parties, and the commonsense view that the later dated map most accurately portrays the relevant area, lead inexorably to the conclusion that the Katz rule applies under the circumstances presented here (see Dallal v City of New York, supra). In fact, the reasonable expectations of the parties provide the most powerful basis for reaching this conclusion.
In this regard, Big Apple is necessarily thrust into a Hobson’s choice. Either Big Apple is vouching for the accuracy and reliability of its maps, or it is not. If it is vouching for the accuracy and reliability of its maps, then, by necessity, the reasonable expectation of the City is that the most current map accurately depicts the relevant location.[4] If, on the other hand, Big Apple, by placing the stamp on the map, is indicating that it cannot *514 vouch for the accuracy and reliability of its current map, then, it follows, that prior maps also cannot be trusted. As Big Apple assuredly considers its maps accurate and reliable, and that this is the very foundation of its mapping system, the most current map filed prior to the accident must be deemed the legally relevant map for purposes of establishing prior written notice of a defective condition.
In sum, even where a Big Apple map is stamped with a notation that it does not supercede any prior maps, it is the map filed closest in time to the accident at issue that controls. Consequently, the March 4, 1996 map filed in this case, which does not contain notice of a defect, is the controlling map for purposes of establishing prior written notice. As this map does not show a defect in the area of plaintiffs accident, and plaintiff has submitted no other cognizable basis for finding an issue of fact regarding the existence of prior written notice, the City is entitled to summary judgment dismissing the complaint.

. At conference with the parties, plaintiff agreed to waive any objection as to the timeliness of the City’s motion (see, Brill v City of New York, 2 NY3d 648 [2004]).

. For purposes of this motion, I assume without deciding that the earlier map does in fact provide the City with notice of the relevant defect.

. Among these decisions, it appears that Kempler is the only case that involved a fall that occurred after Big Apple initiated its policy of stamping the maps. However, the copy of the map attached to the record on appeal in Kempler does not contain such a stamp and the issue was not argued by the parties before the Appellate Division.

. While I recognize that the map, when introduced into evidence, has been considered to be nonhearsay, i.e., it is introduced to establish notice of a defect and not for the truth of the matter asserted therein (see, Larkin v City of New York, NYLJ, Mar. 14, 2000, at 29, col 2 [Sup Ct, Kings County, R.E. Rivera, J.]; see also, Weinreb, 193 AD2d at 598; Becker v City of New York, 131 *514 AD2d 413 [1987]; Acevedo v City of New York, 128 AD2d 488 [1987]), as Justice Benjamin Cardozo so aptly noted in another context, “[discrimination so subtle is a feat beyond the compass of ordinary minds” (Shepard v United States, 290 US 96, 104 [1933]).