OPINION OF THE COURT
Paul G. Feinman, J.
As a threshold matter, in this case the court is called upon to decide whether the instant motion and cross motions for summary judgment are time-barred by Supreme Court, New York County, Civil Branch, rule 17. The rule provides that “[u]nless specified otherwise in a particular case, pursuant to CPLR 3212(a) all motions for summary judgment must be made no later than 60 days after the filing of the note of issue” (emphasis added). The rule was made effective July 15, 2000 and first published in the New York Law Journal’s Rules Pamphlet in its August 2000 edition. The current version, which is unchanged, can be found under the Rules of the Justices, Supreme Court, Civil Court, New York County, Civil Branch <http:// www.courts.state.ny.us/supctmanh/uniform_rules.htm>, cached at <http://www.courts.state.ny.us/reporter/webdocs/ Uniform_Rules_of_the_Justices.htm>. Thus, given that neither the case scheduling order nor any subsequent compliance conference order extended the time for the making of a summary judgment motion, the movant and cross movants cannot claim surprise. Certainly, since the Court of Appeals decision in Brill v City of New York (2 NY3d 648 [2004]), no litigant can reasonably argue that, absent good cause, the court must entertain its late motion for summary judgment.
In this case, defendant NEC Business Network Solutions, Inc. and defendant City of New York move and cross-move, respectively, for summary judgment. J.R. Communications, Inc. (JRC), a third-party defendant and third third-party defendant, cross-move for summary judgment dismissing the two third-party actions that were brought against it. However, as is set forth below, none of these various motions is timely, each having been filed more than 60 days after the filing of the note of issue. The time for filing the motions was never extended by the court, *512 and none of the parties has demonstrated good cause for filing the motion in an untimely manner. Thus, each of the motions is denied.
Factual and Procedural Background
In November 1997, NEC was awarded a contract with the New York City Health and Hospitals Corporation (HHC) to provide various hardware for the data communications network for nine of the approximately 20 facilities run by HHC, including Harlem Hospital (notice of motion, Crowe affidavit, 1Í12; notice of motion, exhibit K). NEC was awarded a second contract in July 1998 to provide hardware and software maintenance and upgrade services (notice of motion, exhibit L). By the subcontract for installation services master agreement signed in June 1997, NEC subcontracted with JRC for installation services (notice of motion, exhibit M). In June 2000, JRC performed installation of cables at Harlem Hospital (notice of motion, Crowe affidavit, 1113).
Plaintiff Dennis Buckner was employed by JRC as a cable installer at Harlem Hospital and was allegedly injured while at work on June 19, 2000 (notice of motion, exhibit J, bill of particulars, 1Í14). His immediate supervisor was Mark Hofsdale, a project manager for JRC (notice of motion, exhibit R, Hofsdale examination before trial [EBT], at 9), responsible for dispatching the workers and assigning them to various tasks throughout the building (id. at 76-77). On the date in question, plaintiff had received as usual his daily instructions from Hofsdale, and was directed to secure cables in a particular conveyor shaft (notice of motion, exhibit Q, Buckner EBT, at 17). He was not provided with any safety equipment (id. at 29-30). Buckner was injured when, as he lost his balance in the shaftway, he rescued himself by grabbing on to a pipe, injuring his shoulder (id. at 33-34). His injuries are permanent in nature (Cannavo affidavit in opposition, exhibit A, bill of particulars, 11 4). Buckner had never spoken with anyone from NEC (notice of motion, exhibit Q, Buckner EBT, at 22). Hofsdale did not recall seeing anyone from NEC at Harlem Hospital for this project (notice of motion, exhibit R, Hofsdale EBT at 65).
Plaintiff commenced this personal injury action in August 2001 against the City of New York and HHC (notice of motion, exhibit A). He claims violations by defendants of Labor Law §§ 200, 240, 241 (6) and § 241-a, and violations of certain sections of the Industrial Code, namely, 12 NYCRR 23-1.7, *513 23-2.5, 23-1.15 and 23-1.16 (notice of motion, exhibit J, verified bill of particulars, at 2-3). A note of issue was served on September 29, 2004 and filed with the court on October 1, 2004. Apart from motion practice, the court’s case management system reveals that from October 2002 through June 2005 the parties have appeared either for a compliance conference or for an “early settlement conference” on 12 occasions before the previously assigned justice or the judicial hearing officer who monitors compliance with discovery orders and conducts early case settlement conferences.[1] At none of these times was a stipulation or order generated extending the time for summary judgment motions. In the city parts, any party can request a compliance conference merely by telephoning the differentiated case management clerk for the part without resort to motion practice, and such conferences have certainly been used to address this issue.
Legal Analysis
Pursuant to CPLR 3212 (a), any party may move for summary judgment once issue is joined, however, the court may set a date after which such motions may not be made, with the date not to be earlier than 30 days after the filing of the note of issue, and not later than 120 days after the filing of the note issue, except with leave of court on good cause shown. Under Supreme Court, New York County, Civil Branch, rule 17, the deadline for moving for summary judgment is 60 days. This has been the rule since July 15, 2000. Regardless of what the parties may or may not believe occurs in other counties, in New York County there is no rule applying a different time frame merely because the City is a party. The rule is the rule; it means what it says and it applies to all parties, including the City of New York.
In Brill v City of New York (2 NY3d 648 [2004]), the Court of Appeals held that in order to preserve the ameliorative nature of that section of the statute, where a motion for summary judgment is not filed within 120 days and there is no good cause offered for the delay, the parties forfeit their opportunity to have their motion considered by the court and must proceed to *514 trial, where a motion to dismiss may be made after plaintiff rests or a directed verdict may dispose of the case during trial {Brill at 653). The Court expressed the hope that litigants and trial courts would henceforward adhere to the statutory deadlines or proffer good cause for the delay in bringing their motions {id.). It would appear that the hope of the Court of Appeals has gone unfilled by these particular litigants, but this trial court will heed the clarion call to promote prompt resolution of civil cases by avoiding belated motions that serve to deny all litigants justice by postponing their day in court for trial with a judge and jury.
None of the movants in this matter brought its motion or cross motion for summary judgment on or before November 29, 2004, which was the applicable 60-day cutoff for summary judgment motions. NEC filed its motion for summary judgment on January 12, 2005. JRC filed its cross motion for summary judgment on April 6, 2005. The City of New York and HHC filed their cross motion for summary judgment on April 8, 2005, a date which they concede is not only beyond the 120-day default cutoff provided in CPLR 3212 (a), but well beyond the actual 60 days accorded to them.
From the tenor of the parties’ papers, there is an apparent assumption that they had 120 days to bring their summary judgment motions {see, e.g., City’s cross motion 1i 1; plaintiffs mem of law in opposition at 13; JRC’s affidavit in opposition 1i 3). None of the litigants explains the basis for this assumption. They have not, for instance, proffered a copy of a court order which changed the period of time allotted for bringing summary judgment motions in this case. The City points out that at a compliance conference which resulted in a so-ordered stipulation signed on October 6, 2004, nearly a week after the filing of the note of issue, the City was directed to produce a “scope of work” file or an affidavit within 45 days. In addition, JRC notes that in the same stipulation, it indicated that JRC “advises [it] will take non party deps.” (See, JRC cross motion, exhibit G, compliance conference stipulation [so-ordered by the previously assigned justice].) Notably, however, the stipulation was silent as concerns an extension of the time for filing summary judgment motions. Nothing prevented the parties from stipulating to an extension, or, as may have been the more prudent course, to strike the note of issue in light of the fact that discovery was still ongoing. Either approach would have avoided the current problem the defendants face. To the extent that JRC suggests *515 that its open-ended statement in the October 2004 stipulation concerning further depositions should vitiate the time frame for the timely filing of summary judgment motions, the court rejects such reasoning (cf., Quizhpi v Lochinvar Corp., 12 AD3d 252 [1st Dept 2004] [court acquiesced in and had actual knowledge of ongoing discovery subsequent to the filing of the note of issue, as confirmed in a writing authored by plaintiffs counsel, and thus court properly consented to consider late motion for summary judgment]). The City’s argument is addressed more fully below.
In Miceli v State Farm Mut. Auto. Ins. Co. (3 NY3d 725 [2004]), the Court of Appeals reiterated Brill, holding that statutory time frames, “like court-ordered time frames . . . are not options, they are requirements, to be taken seriously by the parties” (Miceli at 726 [emphasis added]). Miceli relied on Kihl v Pfeffer (94 NY2d 118 [1999]), which upheld the dismissal of an action where the plaintiff failed to respond to defendant’s interrogatories within the court-ordered time frame, stating that “[i]f the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity.” (94 NY2d at 123.) Miceli again noted the necessity for parties, if bringing untimely motions, to show good cause for the delay or forfeit the opportunity to have the motions considered.
Here, neither NEC or JRC have set forth any reason for why their motions were made more than 60 days after the note of issue was filed. This apparent failure to abide by the court-ordered time frame is in clear violation of the spirit and intent of the statute, the local rule, and of Brill and Miceli. Neither Hernandez v 620 W. 189th Ltd. Partnership (7 Misc 3d 198 [Sup Ct, NY County 2005]) nor Florczyc v Stahal (6 Misc 3d 1011[A], 2005 NY Slip Op 50028[U] [Sup Ct, Kings County 2005]), which hold otherwise, discusses Miceli, most likely because it was decided nearly contemporaneously, and this court declines to follow either Hernandez or Florczyc. Hernandez held that the court could address the merits of a summary judgment motion made more than 60 days after the note of issue was filed because the local rule is “court imposed” rather than statutory. Similarly, Florczyc held that Brill did not apply where a summary judgment motion was made more than 60 days but less than 120 days after the note of issue was filed. Miceli, however, sets forth in unambiguous terms that both statutory and court-ordered time frames are “requirements, to be taken seriously by the parties” (Miceli at 726 [emphasis added]).
*516 Furthermore, it does not appear that JRC undertook any further examinations before trial, and if it did, neither it nor NEC relied on the contents of any such examination when making their respective motions for summary judgment. Similarly, the City and HHC apparently contend that they could not make their cross motion for summary judgment until after they searched for and produced either the above-mentioned file or the affidavit from Harlem Hospital, but their cross motion, similarly to JRC’s, is not based on the result of their search.[2] In other words, all of the discovery needed to make the motions was already completed before the October 6, 2004 compliance conference. For this reason alone, none of the movants has established good cause for bringing their respective motion and cross motions more than 60, let alone 120 days as in the case of the City and HHC, after the note of issue was filed (see, First Union Auto Fin., Inc. v Donat, 16 AD3d 372 [2d Dept 2005]; Espejo v Hiro Real Estate Co., 19 AD3d 360 [2d Dept 2005]; cf., Kunz v Gleeson, 9 AD3d 480 [2d Dept 2004] [where defendant’s basis for summary judgment motion rested upon results of independent medical examinations which were conducted only after the filing of the note of issue, court correctly entertained the late motion]). Accordingly, the motion and cross motions for summary judgment are denied as untimely.
JRC’s cross motion in the alternative for an order seeking a current address from NEC for its former employee Thomas Lomonico, and/or his date of birth, Social Security number or other means of tracking his whereabouts, is granted. NEC is directed to provide JRC with such information within 15 days of the note of entry of this decision and order so that JRC may, if it so chooses, subpoena him for trial. It is ordered that the motion and cross motions for summary judgment are denied in their entirety; and it is further ordered that NEC is to provide JRC with a current address for its former employee Thomas Lomonico, and/or his date of birth, Social Security number or other means of locating his whereabouts, within 15 days of the note of entry of this decision and order.

. October 9, 2002, December 4, 2002, February 5, 2003, July 2, 2003, December 3, 2003, February 18, 2004, May 5, 2004, July 14, 2004, October 6, 2004, April 6, 2005, April 13, 2005, and June 22, 2005. The next early settlement conference is currently scheduled for September 21, 2005. This court did not commence presiding in this city part until January 1, 2005.

. The October 6, 2004 stipulation noted that the City did not need more discovery. It ultimately produced a letter from an individual at Harlem Hospital Center stating that there were no records existing in the Facilities Maintenance Management Department concerning a “scope of work file” in connection with this litigation (City’s cross motion, exhibit B).