| |
|---|
| **Goldberg v City of New York** |
| 2026 NY Slip Op 30667(U) |
| February 25, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 159663/2019 |
| Judge: David B. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **HON. DAVID B. COHEN**
_____
*Justice*

-------------------------------------------------------------------------X

ATHENA GOLDBERG and SANFORD GOLDBERG,

Plaintiffs,

- v -

CITY OF NEW YORK, NEW YORK CITY ECONOMIC
DEVELOPMENT CORPORATION, NORWEGIAN CRUISE
LINE HOLDINGS, LTD., PORTS AMERICA, INC., PORTS
AMERICA GROUP INC., and INTERCRUISES SHORESIDE
& PORT SERVICES and MARPER TERMINAL SERVICES,
CORP.,

Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| PART | 58 |
| INDEX NO. | 159663/2019 |
| MOTION DATE | 03/17/2025, 03/17/2025, 05/15/2025 |
| MOTION SEQ. NO. | 003 004 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 108, 111, 126, 127, 128, 129, 130, 131, 132, 134, 135, 138, 139, 141

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 109, 110, 112, 133, 142

were read on this motion to/for              SUMMARY JUDGMENT (AFTER JOINDER)          .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 136, 137, 140, 143, 144

were read on this motion to/for              SUMMARY JUDGMENT (AFTER JOINDER)          .

This personal injury action arises out an accident that occurred on May 25, 2019, when

plaintiff Athena Goldberg (plaintiff) slipped and fell on the floor of the outdoor gallery at Pier 90

at the Manhattan Cruise Terminal, New York, New York (the Terminal). Defendants Marper

Terminal Services, Corp. (Marper) (motion sequence no. 003), Intercruises Shoreside & Port

Services, Inc. (Intercruises) (motion sequence no. 004), and NCL (Bahamas) Ltd., sued herein as

Norwegian Cruise Line Holdings, Ltd. (NCL) (motion sequence 005) move, pursuant to CPLR

[* 1]

3212, for summary judgment dismissing the complaint brought by plaintiff and her husband, plaintiff Sanford Goldberg (Sanford) (together, plaintiffs), and the cross-claims against them.

## Background

Defendants City of New York and New York City Economic Development Corporation (together, the City) own the Terminal (NY St Cts Elec Filing [NYSCEF] Doc No. 31, second amended complaint ¶¶ 16, 22). Defendant Ports America Inc. (Ports America) oversees the Terminal's operation (NYSCEF Doc No. 79, Cohen affirmation, exhibit H, Amin Abouheif [Abouheif] tr at 11, 14-16). Marper contracted with Ports America to perform janitorial services at the Terminal (NYSCEF Doc No. 83, Cohen affirmation, exhibit L at 2, 11).

NCL operates the "Norwegian Dawn," the docked cruise ship plaintiffs had intended to board on the date of the accident (NYSCEF Doc No. 81, Cohen affirmation, exhibit J, Elizabeth Tauben [Tauben] tr at 30). Intercruises was NCL's ground operator responsible for handling the boarding process at the Terminal, including checking-in passengers and directing passenger traffic (*id.* at 13-14).

Plaintiff testified at a General Municipal Law § 50-h hearing that the accident occurred after she, Sanford and their daughter, Melissa Goldberg (Melissa) walked on Pier 90 towards the ship (NYSCEF Doc No. 75, Cohen affirmation, exhibit D, plaintiff tr at 16-17). It was a beautiful day, and plaintiff did not know if it had rained earlier that day or overnight (*id.* at 21, 23). Plaintiff was walking at a normal pace ahead of Sanford and Melissa when plaintiff slipped on what she believed was water or fluid (*id.* at 18, 20, 22). After she fell to the ground, plaintiff noticed that her shoe and sock were damp or wet (*id.* at 22, 33). Plaintiff did not see anything, like a footprint, indicating that there was something on the ground, and did not see any mats, cones, wet floor signs, or anyone mopping (*id.* at 23-24). Plaintiff had no idea how long the fluid

**159663/2019 GOLDBERG, ATHENA vs. CITY OF NEW YORK**
Motion No. 003 004 005

**Page 2 of 14**

2 of 14

was present on the ground, how much of the floor the fluid covered, or its source (*id.* at 23). Plaintiff testified that after she fell, she observed a "swishy lady" holding a squirt bottle (*id.* at 26). Plaintiff did not know what substance the woman dispensed from the bottle and had no idea if she slipped on what the woman was dispensing (*id.*).

At her deposition, plaintiff repeated that had been walking towards the ship when she "felt something wet under my foot, like a swish … and I knew there was something wet. And then I slid" (NYSCEF Doc No. 76, Cohen affirmation, plaintiff tr at 60). The bottom of her left shoe and the back of her sock were wet after she fell (*id.* at 56-57), though she did not know how her shoe came to be wet (*id.* at 58). Plaintiff never looked at the spot where she fell to determine what caused her to slip (*id.* at 56, 58). Plaintiff did not see anyone mopping or cleaning (*id.* at 78). She did not see any water or other foreign substance or see anyone drop any liquid on the ground before she fell (*id.* at 171-172). Plaintiff never saw a puddle or wet spot at any time (*id.* at 58). Plaintiff admitted that she had no idea what was on the floor that caused her fall (*id.* at 172-173). Plaintiff did not know how long the substance had been on the ground, how much of the floor it covered, or how it came to be there (*id.* at 173-174). Neither Sanford nor Melissa ever told plaintiff that they saw a wet condition on the ground (*id.* at 58-59).

On prior cruises with NCL, plaintiff had seen a "swishy lady" holding a squirt bottle spraying what plaintiff assumed was a clear disinfectant on passengers' hands upon boarding the ship (*id.* at 40-41, 48). Plaintiff testified that after she fell, she saw a swishy lady carrying a squirt or spray bottle a few feet away walking in the middle of the pier (*id.* at 43, 165-167). Plaintiff did not see the woman spray anyone but "[s]he had the bottle up, like [in] a spray position" (*id.* at 46). Plaintiff testified that she did not think the woman sprayed anyone after walking past, but "I could tell you that she was in the position to squirt. Whether she squirted, I

159663/2019   GOLDBERG, ATHENA vs. CITY OF NEW YORK          Page 3 of 14
Motion No.  003 004 005

3 of 14

[* 3]

don't know" (*id.* at 167-168). Plaintiff could not recall what the woman was wearing to indicate her employer (*id.* at 167). Several people wearing uniforms approached plaintiff after the accident, and one told plaintiff that people slipped on the pier "all the time," but did not explain why those persons had slipped (*id.* at 64-66).

At his General Municipal Law § 50-h hearing, Sanford testified that he was walking several feet behind plaintiff when she slipped (NYSCEF Doc No. 128, Cotignola affirmation, exhibit B, Sanford tr at 7). He did not know what caused plaintiff to slip, though plaintiff told him that "[s]he felt it was some liquid, possibly water" (*id.* at 9). He did not examine plaintiff's clothes or shoes to determine if they were wet (*id.*). Sanford did not notice anyone passing out glasses or bottles of water in the area (*id.* at 10). He also observed a woman with a dispensing bottle walking away from the gangplank to the ship (*id.* at 10-11). Sanford heard someone from the pier say that people always slipped at that location, but that person did not explain what on the surface of the pier caused those persons to slip (*id.* at 12-13).

Sanford testified at his deposition that he was walking five feet behind plaintiff when she fell (NYSCEF Doc No. 77, Cohen affirmation, exhibit F at 13, 17). Sanford repeated that he did not know what caused plaintiff to slip (*id.* at 17-18). He had not encountered any water, liquid or foreign substance on the ground before the accident (*id.* at 15-16), and he did not see any liquid in the area where plaintiff fell at any point (*id.* at 18, 49). He did not notice whether plaintiff's clothes, socks or shoes were wet (*id.* at 18). Sanford stated that if something was on the ground, he did not know what the substance was, how it came to be on the ground or long it had been there (*id.* at 50). Sanford testified that after plaintiff fell, he noticed a woman holding a spray bottle but did not know whether the substance in the bottle had any relation to the accident (*id.* at 19-20, 51). The woman also was not wearing anything that could have identified her employer

159663/2019 GOLDBERG, ATHENA vs. CITY OF NEW YORK Page 4 of 14
Motion No. 003 004 005

4 of 14

[* 4]

(*id.* at 28). Sanford testified that after the accident, he overheard two men wearing orange work vests say that people were always slipping but they did explain why those persons slipped (*id.* at 25-27).

Melissa testified that she and her parents had been walking on the gallery for two minutes when plaintiff fell (NYSCEF Doc No. 84, Cohen affirmation, exhibit M, Melissa tr at 25). In that time, Melissa did not see a foreign substance or water on the ground and did not feel or encounter anything slippery or wet (*id.* at 28). Melissa did not know what plaintiff had slipped on (*id.* at 43) and had no knowledge of what substance plaintiff slipped on or how long it had been there (*id.* at 92). Melissa never looked at the ground after plaintiff fell and did not look at plaintiff's clothes to see if they were wet (*id.* at 48, 82). Melissa recalled seeing a "'Washy Washy' lady … from the ship … spray hand sanitizer" on the gallery (*id.* at 99-100). On prior cruises with NCL, this person was stationed at the dining hall and at entrances to the boat, terminals and foreign ports (*id.* at 100-103). On the date of the accident, Melissa observed at least one such person a few feet away in the gallery spraying or attempting to spray liquid sanitizer from a spray bottle onto people's hands (*id.* at 86-88, 124-127), and "assumed" the person worked for NCL (*id.* at 126). Melissa was unsure if the woman sprayed her hands, though this would have happened right before the accident (*id.* at 127, 138). Melissa testified that she did not see any hand sanitizer fall onto the ground and would not know if plaintiff slipped on hand sanitizer (*id.* at 110). Melissa testified that she had no personal knowledge whether the woman sprayed anything on the floor that caused plaintiff to fall, but stated, "I know that they were spraying stuff. She was spraying hand sanitizer" (*id.* at 83).

In May 2019, Abouheif worked for Ports America as the superintendent responsible for running the Terminal's day-to-day business (NYSCEF Doc No. 79 at 12). Defendant Ports

159663/2019 GOLDBERG, ATHENA vs. CITY OF NEW YORK Page 5 of 14
Motion No. 003 004 005

5 of 14

[* 5]

America Group Inc. is not involved with Pier 90 (*id.* at 8). Abouheif testified that Ports America "handle[s] the cruises that come in … [and] ensure[s] that all those operations involving the cruise ships runs on time" (*id.* at 12-13). This involves providing staff to tie down cruise ships, offload and reload items, and perform screening and security checks (*id.* at 14-16). Marper performed janitorial cleanup, including the gallery where passengers walk to exit and board ships, under a contract with Ports America (*id.* at 21, 23). Abouheif testified that Ports America inspects the Terminal for dangerous or slippery conditions the day before a ship arrives (*id.* at 38-39, 51) but otherwise does not inspect the gallery for any dangerous or slippery conditions on any set schedule (*id.* at 44). All employees are trained to report unsafe conditions anywhere on the pier (*id.* at 40-43, 53). If a condition needed to be mopped, Ports America would contact Marper to perform this task (*id.* at 46). Abouheif testified the gallery is open to the elements and "[p]retty far up" above sea level (*id.* at 52). Abouheif had never experienced sea water making its way up onto the gallery and was not aware of any leaks along the gallery (*id.*).

Abouheif and a co-worker, John Hurley (Hurley), responded to the accident location (*id.* at 28). Abouheif did not inspect the gallery floor for any liquid or slippery substance at that time, and Intercruises never contacted Ports America about a slippery condition before the accident (*id.* at 37-38). Hurley, who spoke to plaintiff, later told Abouheif that plaintiff said she "felt faint" and fell (*id.* at 29). Abouheif expressed it was "possible" that persons possibly employed by NCL were tasked with spraying sanitizer on passengers' hands in the gallery before boarding (*id.* at 47). He was unaware of any other substances sprayed on passengers on the gallery and did not know if any sanitizer fell onto the gallery floor (*id.* at 50).

Pedro Rodriguez Pacheco (Rodriguez), Marper's president (NYSCEF Doc No. 85, affirmation, exhibit N, Rodriguez affirmation, ¶ 1), testified that Marper's janitorial services

159663/2019 GOLDBERG, ATHENA vs. CITY OF NEW YORK
Motion No. 003 004 005

Page 6 of 14

[* 6]

included sweeping, picking up trash, and mopping the gallery the day before a ship arrives (NYSCEF Doc No. 78, Cohen affirmation, exhibit H, Rodriguez tr at 20-21, 25-26). Marper also cleans the gallery when contacted (*id.* at 20). Rodriguez affirms that no Marper employee created a defective or slippery condition on the date of the accident (NYSCEF Doc No. 85, ¶ 6).

Latasha Gibbs (Gibbs) worked for Intercruises as an operations manager responsible for overseeing the ground team handling the passenger disembarkation and embarkation process (NYSCEF Doc No. 80, Cohen affirmation, exhibit I, Gibbs tr at 20, 50, 82). Intercruises employees do not work on ships and work only on the port side (*id.* at 25-26). Gibbs stated that Intercruises staff stand on the gallery to direct passengers leaving and boarding ships; these staff members had no other duties with respect to the gallery (*id.* at 52-54). Gibbs was unaware of any protocol that passengers boarding NCL ships had to apply disinfectant or hand sanitizer and has never seen anyone applying disinfectant spray to passengers boarding ships (*id.* at 58-60). Hand sanitizer was not available to passengers on the Terminal side or at either end of the gangway (*id.* at 60). Intercruises is not responsible for maintaining the Terminal (*id.* at 47).

Gibbs testified that on the day of the accident, she received a call that someone on the gallery was injured (*id.* at 18). When Gibbs arrived, plaintiff was on the ground (*id.* at 27). Gibbs did not notice if plaintiff's shoes were wet (*id.* at 80) and did not make any observations about the condition of the floor at that time (*id.* at 54). Gibbs did not inspect or investigate the area (*id.* at 32-33). Gibbs took two photographs of the accident location for Intercruises' incident report (*id.*). Gibbs testified, "[w]hen I took those photos, the floor was just normal….I didn't identify anything on the floor" and "I don't recall seeing anything" like water or grease (*id.* at 79). Gibbs did not know what caused plaintiff to fall (*id.* at 84). Gibbs also did not recall

159663/2019 GOLDBERG, ATHENA vs. CITY OF NEW YORK                                    Page 7 of 14
Motion No. 003 004 005

7 of 14

seeking anyone spray disinfectant on passengers boarding NCL's cruise ship on the date of the accident (*id.* at 80).

Tauben, the senior director of port and shipboard guest services for NCL, testified that she oversees the staff and operations in turnaround ports where NCL's cruises begin and end (NYSCEF Doc No. 81 at 11). NCL's ground operator at each port performs passenger check-ins and provides directional assistance; NCL does not perform this work (*id.* at 13). NCL crew members do not assist passengers embarking on cruises at the Terminal (*id.* at 17). Tauben explained that NCL sanitizes passengers' hands, but this is done on board ships (*id.* at 38). None of the limited NCL crew, like IT staff, who come off ships to assist the ground operator spray any liquid on passengers (*id.* at 20-21, 41), and NCL staff do not spray passengers' hands at cruise terminals in the United States, though this occurs in some foreign ports (*id.* at 37-38). Tauben has never heard of Marper, and NCL's housekeeping responsibilities do not extend outside the ship (*id.* at 26).

Plaintiff and Sanford, suing derivatively, bring this action sounding in negligence. Marper, Intercruises and NCL now move separately for summary judgment.

### The Contentions

Marper, Intercruises and NCL contend the complaint must be dismissed because plaintiff cannot identify the cause of her fall. Marper additionally argues that as a contractor, it did not owe a duty to plaintiff under any of the three exceptions discussed in *Espinal v Melville Snow Contrs.* (98 NY2d 136, 140 [2002]). Intercruises and NCL argue that they did not maintain the Terminal and did not create or have actual or constructive notice of the condition on which plaintiff slipped. NCL further argues that it did not employ a "swishy lady" at the Terminal.

**159663/2019  GOLDBERG, ATHENA vs. CITY OF NEW YORK**                    **Page 8 of 14**
   Motion No.  003 004 005

8 of 14

Plaintiffs counter that plaintiff fell on a wet and slippery recurrent condition, specifically "liquid that obviously accumulated on the gallery floor" created by NCL when its employee sprayed hand sanitizer "indiscriminately at passengers" (NYSCEF Doc No. 134, Gabriele affirmation, ¶ 5; NYSCEF Doc No. 136, Gabriele affirmation, ¶¶ 5, 67, 89). As to Marper, plaintiffs submit that Marper owed plaintiff a legal duty to maintain the Terminal under the third *Espinal* exception and that Marper failed to offer any evidence of when the gallery was last cleaned and inspected. Plaintiffs also maintain that Marper failed to submit an affidavit from a person with personal knowledge. They challenge whether Rodriguez's Spanish-language affirmation is admissible because the translator's affidavit fails to comport with CPLR 2101 (b). As to NCL, plaintiffs argue that NCL made "special use" of the Terminal and had actual and constructive notice of the condition because its employee created it. Plaintiffs further posit that all defendants were on notice of a recurring condition based on the statement made by an unknown cruise terminal employee that "people slip all the time on this pier," which plaintiffs contend constitutes a party admission against interest (NYSCEF Doc No. 136, ¶ 87).

The City, Ports and Ports America Group, Inc. support Marper's motion insofar as Marper seeks dismissal predicated on plaintiff's inability to identify the cause of her fall. If the court declines to grant the motion, these defendants argue that an issue of fact exists on whether Marper displaced the City's and Port America's duty to maintain the Terminal. NCL partially opposes Marper's motion on the same ground.

Marper, in reply, contends that plaintiffs cannot rely on any of the *Espinal* exceptions because they failed to plead an exception in the complaint or the bill of particulars. NCL largely repeats its arguments in reply.

159663/2019 GOLDBERG, ATHENA vs. CITY OF NEW YORK Page 9 of 14
Motion No. 003 004 005

9 of 14

## Analysis

"To succeed on a motion for summary judgment, the proponent of the motion must 'make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Golobe v Mielnicki*, 44 NY3d 86, 92 [2025], *rearg denied* 43 NY3d 1013 [2025] [citation omitted]). If the moving party fails to meet its prima facie burden, the motion must be denied without regard to the sufficiency of the opposing papers (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]). If the moving party meets its burden, then the non-moving party must furnish evidence in admissible form sufficient to raise a triable issue (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "[B]ald, conclusory assertions or speculation and '[a] shadowy semblance of an issue' are insufficient to defeat summary judgment" (*Stonehill Capital Mgt. LLC v Bank of the W.*, 28 NY3d 439, 448 [2016] [citation omitted]; *accord Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

As an initial matter, the court will consider NCL's untimely motion. The preliminary conference order states that dispositive motions shall be filed within 60 days after a note of issue has been filed (NYSCEF Doc No. 59). Plaintiffs filed the note of issue on January 15, 2025 (NYSCEF Doc No. 66), and NCL acknowledges it did not move until May 15, 2025 (NYSCEF Doc No. 113). Although the court cannot consider an untimely summary judgment motion absent "good cause for the delay" (*Brill v City of New York*, 2 NY3d 648, 652 [2004], citing CPLR 3212 (a)]), the court may consider an untimely motion or cross-motion if it is made on identical or nearly identical grounds as a timely one (*Sikorjak v City of New York*, 168 AD3d 778, 780 [2d Dept 2019] [collecting cases]).

While NCL has not furnished an excuse for the delay, the motions brought by Marper and Intercruises are timely, and Marper, Intercruises and NCL have all raised the same argument that

159663/2019  GOLDBERG, ATHENA vs. CITY OF NEW YORK
Motion No. 003 004 005

Page 10 of 14

[* 10]

plaintiff cannot identify the cause of her fall. Additionally, CPLR 3212 (b) authorizes the court to search the record and grant summary judgment to a non-moving party.

A defendant moving for summary judgment in a slip-and-fall action bears the burden of demonstrating that it neither created nor had actual or constructive notice of a hazardous condition (*Briggs v Pick Quick Foods, Inc*., 103 AD3d 526, 526 [1st Dept 2013]). A defendant may also meet this burden by showing that the plaintiff cannot identify the cause of the fall without engaging in speculation (*Mitgang v PJ Venture HG, LLC*, 126 AD3d 863, 863-864 [2d Dept 2015]; *Smith v City of New York*, 91 AD3d 456, 457 [1st Dept 2012], *lv denied* 21 NY3d 858 [2013]). While the "plaintiff need not identify the exact manner in which the incident occurred … [, the plaintiff must] identify the defect enough for a trier of fact to find, based on logical inferences, that the defect proximately caused the accident" (*Ovalles-Sosa v Khoudari*, 217 AD3d 530, 531 [1st Dept 2023]). The circumstantial evidence must be such to reasonably infer that the defendant's negligence proximately caused the accident (*see Yuet Chun Lee v 124-126 Mott Corp*., 212 AD3d 464, 464 [1st Dept 2023]; *Chavez v Prana Holding Co. LLC*, 200 AD3d 449, 450 [1st Dept 2021]).

Here, plaintiff testified that she never saw any water, liquid or other slippery substance on the ground immediately before or after she fell (NYSCEF Doc No. 76 at 23-24, 58, 171-172). Sanford and Melissa also never saw a wet or slippery condition on the ground (NYSCEF Doc No. 77 at 18, 49; NYSCEF Doc No. 84 at 28). Moving defendants thus establish that plaintiffs cannot identify the condition that caused the accident (*see Ellis v City of New York*, 188 AD3d 594, 594 [1st Dept 2020] [plaintiff, who slipped on a "'wet substance,' … did not know what the substance was, could not provide any description of it, and did not see the substance on any part of the stairs before or after the fall"]; *Escobar v New York Univ*., 172 AD3d 535, 536 [1st Dept

159663/2019  GOLDBERG, ATHENA vs. CITY OF NEW YORK
Motion No.  003 004 005
Page 11 of 14

11 of 14

[* 11]

2019] ["[p]laintiff testified that he did not see anything on the stairs immediately before he fell, and neither he nor anyone else has ever identified the cause of his accident"]; *Issing v Madison Sq. Garden Ctr., Inc*., 116 AD3d 595, 595 [1st Dept 2014] [plaintiff never saw water on basketball court before or after he fell]; *Reed v Piran Realty Corp*., 30 AD3d 319, 319 [1st Dept 2006], *lv denied* 8 NY3d 808 [2007] [neither plaintiff nor his girlfriend could identify cause of fall]).

Plaintiffs fail to raise a triable issue in opposition. Contrary to their contention, the circumstantial evidence is insufficient to draw the logical inference that any defendant's negligence was a proximate cause of the accident. As to whether an NCL employee caused the accident by spraying hand sanitizer, neither NCL nor Intercruises employed someone to spray hand sanitizer at the Terminal (NYSCEF Doc No. 81 at 37-38; NYSCEF Doc No. 80 at 59-60). Plaintiff and Sanford could not identify the woman's employer from her clothing, and neither saw the woman spray anything (NYSCEF Doc No. 76 at 46, 167-168; NYSCEF Doc No. 77 at 28, 19-20, 51). Melissa "assumed" the person worked for NCL (NYSCEF Doc No. 84 at 126), while Abouheif testified "[i]t's possible" NCL had employed someone to spray liquid on passengers (NYSCEF Doc No. 79 at 47). Thus, plaintiffs offer only speculation and have produced no evidence connecting the woman on the gallery to NCL or any other defendant or that she was spraying any substance.

Second, that plaintiff's shoe and sock were wet after the accident "simply does not, in isolation, suffice to support a reasonable inference that 'the injury was sustained wholly or in part by a cause for which the defendant was responsible'" (*Zanki v Cahill*, 2 AD3d 197, 199 [1st Dept 2003], *affd* 2 NY3d 783 [2004] [citation omitted]). Plaintiff admitted that she did not see anyone spraying, mopping or cleaning (NYSCEF Doc No. 76 at 78).

159663/2019 GOLDBERG, ATHENA vs. CITY OF NEW YORK Page 12 of 14
Motion No. 003 004 005

12 of 14

Plaintiffs' argument that moving defendants failed to demonstrate their lack of constructive notice is unpersuasive. Plaintiffs and Melissa testified they never saw any wet substance before the accident and did not know how long it had been on the ground before plaintiff fell (NYSCEF Doc No. 76 at 173-174; NYSCEF Doc No. 77 at 50; NYSCEF Doc No. 84 at 92). This testimony establishes the lack of constructive notice even though there is no evidence in the record of when the floor was last inspected (*see Escobar*, 172 AD3d at 536; *Issing*, 116 AD3d at 595).

Plaintiffs' argument that defendants were on notice of a specific recurring slippery condition is equally unpersuasive. Plaintiffs' testimony that unnamed employees said people were always slipping on the pier is insufficient to establish that any defendant was on notice of the specific condition that caused plaintiff to slip (*see Chan v City of New York*, 238 AD3d 446, 447 [1st Dept 2025]; *Zanki*, 2 AD3d at 198-199 [speculation and guesswork insufficient to support plaintiff's claim of a dangerous recurring condition]). Furthermore, the statement attributed to these unnamed employees does not constitute a party admission under CPLR 4549, as plaintiffs have argued, in the absence of any proof as to their employer's identity (*see BL Doe 5 v Fleming*, 229 AD3d 1076, 1079 [4th Dept 2024] ["CPLR 4549 … requires that the statement be uttered 'during the *existence* of that [employment] relationship'"]).

In view of the foregoing, there is no need to address the parties' remaining arguments.

The court also searches the record pursuant to CPLR 3212 (b) and grants summary judgment dismissing the complaint and cross-claims against the City, Ports America and Ports America Group, Inc.

Accordingly, it is

159663/2019  GOLDBERG, ATHENA vs. CITY OF NEW YORK
Motion No.  003 004 005

Page 13 of 14

[* 13]

ORDERED that the motion of defendant Marper Terminal Services, Corp. for summary judgment (motion sequence no. 003) is granted, and the complaint and all cross-claims against said defendant are severed and dismissed, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

ORDERED that the motion of defendant Interstate Shoreside & Port Services, Inc. for summary judgment (motion sequence no. 004) is granted, and the complaint and all cross-claims against said defendant are severed and dismissed, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

ORDERED that the motion of defendant NCL (Bahamas) Ltd., sued herein as Norwegian Cruise Line Holdings, Ltd. for summary judgment (motion sequence no. 005) is granted, and the complaint and all cross-claims against said severed and defendant are dismissed, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

ORDERED upon searching the record, the court hereby grants summary judgment to defendants City of New York, New York City Economic Development Corporation, Ports America Inc. and Ports America Group, Inc., and the complaint and all cross-claims against said defendants are severed and dismissed, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

ORDERED that the complaint is thus dismissed in its entirety, and the Clerk of the Court is directed to enter judgment accordingly.

**2/25/2026**
**DATE**

2026022515185276DCOHEN76D49E41DD6A4D83B49DCD8B08A580FE

**DAVID B. COHEN, J.S.C.**

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

159663/2019   GOLDBERG, ATHENA vs. CITY OF NEW YORK
Motion No.  003 004 005

Page 14 of 14

14 of 14

[* 14]